NELSON v. COUNTY OF WAYNE.

1. MANDAMUS—COUNTY BOARDS—PARTIES—WATER SUPPLY.

Board of county road commissioners *held*, not a proper party to mandamus proceeding by resident of county against county to compel latter to supply water from nearby water main to plaintiff's residence where it was designated by the county board of supervisors as a body authorized to contract with a designated city within the county to supply water for a county-wide water and sewage project in accordance with plans and specifications prepared by the board of county road commissioners where entire project was dependent on receipt of a Federal grant and there is no showing it is or will be available nor that plans or specifications have been adopted.

2. WATERS AND WATERCOURSES—SUPPLY FOR RESIDENCE—COUNTY-WIDE WATER AND SEWAGE PROJECT.

Applicant for water services for residence purposes, a person residing in county outside of city, was not entitled to writ of mandamus compelling county to furnish same merely because board of supervisors had adopted a resolution appropriating a sum of money for installation of a county-wide water and sewage system and vesting the board of county road commissioners and board of auditors with authority to contract with city's board of water commissioners for service where installation of such system was entirely dependent upon receipt of a Federal grant of money which had not been declared available and no showing made that it would be available.

3. MUNICIPAL CORPORATIONS—WATER WORKS—OPERATION.

In the operation and management of a city-owned waterworks system a city has the same right and power to do those things connected with the operation of such business as would a private corporation (Const. 1908, art. 8, § 23).

4. SAME—AUTHORIZED BUSINESS OPERATIONS NOT INTERFERED WITH BY COURT.

Courts are not disposed to interfere with the management of an authorized business, conducted by the municipal authorities presumably in the interest and for the benefit of the city and its inhabitants, unless dishonesty or fraud is manifest, or the vested power with its implied discretion has been clearly exceeded or grossly abused.

5. SAME—WATER SUPPLIED BEYOND CITY LIMITS—DISCRETION OF COUNCIL—COURTS.

In furnishing water to customers beyond city boundaries the city is exercising its business powers and may conduct such business in the manner which promises the greatest benefit to the city and its inhabitants in the judgment of the city council and a court may not interfere with the reasonable discretion of the council in such matter (Const. 1908, art. 8, § 23).

6. SAME—WATER SUPPLY TO COUNTY INSTITUTIONS WITHOUT CITY LIMITS.

Undertaking to supply water for county institutions, located outside the city limits, under contract whereby county went to great expense in laying the main and installing reservoir and booster station, and reserved right to approve agreements to furnish other parties from the main, *held,* within legal rights of city, it being reasonable to conclude that neither the city

nor the county would have entered into a contract with any other conditions.

7. SAME—COUNTIES—WATER SUPPLY FOR RESIDENTS AND COUNTY INSTITUTIONS—DISCRIMINATION.

In permitting board of county auditors to exercise control of operation of water main built at great expense to county in order that city might supply water to county institutions outside the city limits, the city did not illegally discriminate against plaintiff who sought to compel city to supply water for his residence from the water main where city could not supply plaintiff or the county institutions without the use of the county's reservoir and booster station (Const. 1908, art. 8, § 23; 1 Comp. Laws 1929, § 2445 *et seq.*).

8. SAME—CONTRACT FOR SUPPLYING WATER TO COUNTY INSTITUTIONS OUTSIDE OF CITY LIMITS.

Contract between city board of water commissioners and board of county auditors for supply of water to county institutions located outside of city limits whereby county was required to install reservoir and booster station and lay water main, the last to become city property, and restricting extensions or additions to such only as have been approved by each party was not against public policy nor contrary to provisions of statute relative to sale by a municipal corporation of water for use outside of its corporate limits (Const. 1908, art. 8, § 23; 1 Comp. Laws 1929, § 2445 *et seq.*).

9. WATERS AND WATERCOURSES—COUNTIES—DISCRIMINATION AS TO PRIVATE USERS.

Action of board of county auditors in approving tapping of a water main for private homes and refusal to permit tapping for plaintiff, a resident in, and owner of, a subdivision containing 66 lots, some of which he had sold under contract whereby he agreed to lay water main in subdivision but purchaser had to make his own request for tapping water main from city to county institutions, located outside of the city, *held,* not a discrimination against plaintiff but an exercise of board's discretionary power, where record shows the board was greatly concerned as to the future of the water main which supplied two county institutions and additional expense involved in supplying additional consumers, its policy of refusing service to subdivision residents having been adopted without respect to any individual.

10. MANDAMUS—DISCRETION OF OFFICERS—COURTS.

In mandamus proceeding against an elected or appointed officer a court has no right to substitute its own discretion for the discretion of the officer.

11. MUNICIPAL CORPORATIONS — COURTS — LOCAL GOVERNMENTAL POLICY.

Courts may not dictate the local governmental policy of municipalities, so long as power and authority to govern, vested in the local municipal officers, is exercised in a manner not contrary to law or opposed to sound public policy.

12. MANDAMUS—WATER SUPPLY OUTSIDE OF CITY LIMITS.

Resident in, and owner of, subdivision containing 66 lots *held,* not entitled to writ of mandamus compelling city and county to supply him water from nearby water main extending beyond city limits and built by county in order to afford water supply for county institutions, notwithstanding a few private homes had been supplied with water therefrom (Const. 1908, art. 8, § 23; 1 Comp. Laws 1929, § 2445 *et seq.*).

Appeal from Wayne; Campbell (Allan), J. Submitted May 23, 1939. (Calendar No. 40,576.) Decided June 22, 1939.

Petition by John Nelson for writ of mandamus to require the County of Wayne, a municipal corporation, and others to permit petitioner to tap a water main. Writ denied. Petitioner reviews by appeal in nature of certiorari. Affirmed.

*Davidson, Nelson, Shoeck & Kull,* for petitioner.

*Duncan C. McCrea,* Prosecuting Attorney, *Garfield A. Nichols* and *Russell C. Duncan,* Assistant Prosecuting Attorneys, for defendants County of Wayne and Wayne County Board of Auditors.

*Raymond J. Kelly,* Corporation Counsel, and *Paul T. Dwyer,* Assistant Corporation Counsel, for defendant City of Detroit.

CHANDLER, J. The county of Wayne owns and maintains an institution at or near the village of

Northville in said county known as the Wayne
County Training School, located about five miles
from the Detroit city limits, and which institution
has been in existence for more than 10 years.

In 1929, the county deemed it necessary to secure
a supply of water for the training school, and its
board of supervisors sometime prior to June of that
year adopted the following resolution:

"Resolved, by the board of supervisors for the
county of Wayne, that the board of county auditors
be, and hereby is, authorized and empowered to enter
into negotiations with the board of water commis-
sioners for the city of Detroit for the extension of
the water main system from its present terminus at
the Five Mile and Farmington roads, to the property
of the Wayne County Training School, Northville,
Michigan, the estimated cost of which undertaking
is approximately $104,000, and to enter into contract
with said board of water commissioners for such
service upon such terms as may be agreed upon."

Pursuant to this resolution, on the 27th day of
June, 1929, the board of auditors of Wayne county
and the board of water commissioners of the city of
Detroit entered into a contract, the essential provi-
sions thereof, so far as this proceeding is concerned,
being as follows:

"Party of the first part (board of water commis-
sioners) hereby agrees to sell and deliver to the
party of the second part (board of auditors of Wayne
county), its successors·or assigns of said properties,
or any part thereof, a supply of water from the water
system of the city of Detroit, sufficient for the needs
of the occupants of said properties (Wayne County
Training School) for all proper purposes, upon the
terms and conditions contained in this contract. * * *

"Party of the second part agrees to build at its
own expense and connect to the pipes of the city of
Detroit, under supervision of the party of the first

part, a reservoir and booster station on lot 73, Brightmoore. Home Acres on Five Mile road east of Farmington road and a 12-inch main in Five Mile road, from this point west to Bradner road, thence north along Bradner road to the E and W ¼ line of section 14, Northville township, thence westerly along this E and W ¼ line through a private right of way to the above properties on the west side of the Plymouth-Northville road. * * *

"Party of the second part hereby grants to the city of Detroit all the water pipes, mains and all other underground equipment and material for water, together with all hydrants now installed or which may hereafter be installed for the purpose of supplying the properties above described, and said city of Detroit will maintain said water pipes, mains and other underground equipment and hydrants, and should this contract be terminated as hereinafter provided, party of the second part shall have no claim of reversionary rights in and to said water pipes, mains or hydrants now installed or which may hereafter be installed in said properties. This does not include the reservoirs, booster stations or mains on the properties owned by the party of the second part. * * *

"No extensions or additions of water mains or pipes from the properties herein described into any other property or properties shall be made until plans have first been submitted and approved by said board of water commissioners, and it is understood and agreed that this contract is limited to the properties as herein described.

"Party of the first part shall have the right without cost to the party of the second part to furnish water to owners of other properties than those herein described through the water mains and pipes herein granted to said party of the first part, and to use any mains, pipes or other equipment which is now or may be hereafter installed upon such terms and conditions as may be agreed upon between the party of the first part herein and such owners of other properties. Provided, however, that during the time the

reservoir and booster station on lot 73 shall be operated by the party of the second part, first party agrees that it will not enter into any agreement to furnish water to owners of other properties without first securing the written approval of the party of the second part.''

The board of auditors then caused to be constructed on said lot 73 the reservoir and a pumping and booster station, secured the right of way, and laid a 12-inch main therefrom to the training school at a cost to the county of Wayne, according to the testimony of the secretary of the board, of approximately $200,000.

From the record it appears that after installation of the 12-inch water main, the reservoir and booster station, approximately 12 tappings for pumping water to private homes have been permitted by the board of auditors. While the record is not conclusive as to the size of these tappings, it fairly appears from the testimony of Mr. Gould, engineer for the county of Wayne, that the size of each tapping is five-eighths of an inch. The record also discloses that the city of Detroit, with the approval of the board of auditors, has extended the water main from the training school to the Detroit House of Correction, a Detroit-owned institution, for the purpose of supplying said institution with water.

About October, 1937, plaintiff and appellant made application to a Mr. Elliott of the training school for permission ''to tap the training school water line on Bradner road, for the purpose of obtaining water for my proposed home, to be located in Plymouth Gardens Subdivision No. 1.'' This application was referred to the county engineer who filed a report with the Wayne county board of auditors in regard to the application on November 17, 1937, the contents of which, according to his testimony, was to this effect:

"That it did not particularly add any great hardship to the service to the line, and the service to the Training School had not been affected materially by single tappings.

"*Q.* I see. And is that still your opinion, Mr. Gould?

"*A.* Why, especially when you have—

"*Q.* As to individual taps?

"*A.* Especially when you have a five-eighths inch tapping or a small tapping, there is not a great deal of water can get out of it.

"*Q.* You didn't mean that answer for innumerable taps along the line did you, Mr. Gould?

"*A.* No, sir. If you get to about 1,000 tappings, then you have put it in the shape of using the entire line, using the capacity of the entire line.

"I felt from the application (by Mr. Nelson) that a subdivision was—because his original application mentioned this subdivision and that is the first time we have had a definite home, single home located in a subdivision, where an application was made for it, that is for a home. I had conversations and exchanged correspondence with Mr. Nelson, relative to the subdivision proposition. I summarized it in a report to the board of auditors in a letter addressed November 17th. I asked Mr. Nelson directly, and at that time he said that he had acquired this piece of property which was known as Plymouth Gardens No. 1, which was a subdivision in Northville township, and he presented to me a blue print showing the subdivision, which indicated a total of 66 lots. Mr. Nelson indicated to me that he was desirous of building a new home in this subdivision, and that he wanted water for his own purposes; however he showed me, and turned over to me a copy of a land contract indicating that he had made sales of property in this subdivision to a number of people, and that in this contract was a statement that he would put down a water line through the property, but it would be up to the individual owner of any property

to make his own request for a tapping. So in view of the fact that it looked like a subdivision main, I called this (to the) attention of the board of auditors, and also to Mr. Wright of the water board, and at that time a request was made to the auditors for a policy to determine subdivision applications. The board of auditors handled the application from this point on.''

Mr. Gould further testified that some time prior to plaintiff's application, the board had an application for a number of tappings for a subdivision from the Leinbach-Humphrey Company, but only three were approved. The secretary of the board of auditors gave the following testimony relative to the action of the board in denying plaintiff's application, and granting three or four tappings on the subdivision of the Leinbach-Humphrey Company:

''I was present at meetings of the board of Wayne county auditors, when the matter of the water supply to Mr. Nelson was discussed, and I was present at a meeting when the question was raised as to whether Mr. Nelson was concerned solely with the question of securing water for his home, or had the proposition of securing water for a subdivision in mind. The action of the board of county auditors was based on the report of Mr. Gould, which raised the question of the policy of the board of county auditors, as affecting water supplies to subdivisions. The board of county auditors had previously granted permits or authorized permits to individuals. In this particular application, however, the question was raised and the matter was referred to Mr. Gould. In this letter to the board of county auditors he stated that a policy must be determined as to subdivision property, and that is the whole basis of the refusal of the board of county auditors.

''We were concerned with the future of this water line. The county of Wayne went to a great expense, I think something like $200,000, and after we built

that water line we were compelled to give it over to the city of Detroit. The only privilege we got is to pay the expense for this pumping station and electricity and all those things, and we are concerned in how much expense we are going to be put to by added persons on the line.

"The board of county auditors have never stated that they would not grant to an individual; the question was not raised definitely with the board of county auditors, except in this case, except in this other case that was testified to here by Mr. Gould on the request of Mr. Nelson, and I think they wanted applications for 24 or 36 taps. However, that was turned down definitely, and I think as Mr. Gould stated, permission to grant as far as we did, three or four, was granted. That was the Leinbach-Humphrey subdivision. * * *

"*Q.* Now, have the board of Wayne county auditors adopted a policy of not granting any more taps into this water line?

"*The Court:* You mean to anybody?

"*Mr. Nichols:* To anyone.

"*A.* I don't believe, Mr. Nichols, that there is a definite resolution passed by the board of county auditors, establishing that as a firm policy. The policy, as I attempted to point out, is not to grant any applications where it involved a subdivision.

"*Q.* But they have adopted no policy in regard to the individual home owner?

"*A.* Except that they have not granted any since their refusal of Mr. Nelson, except those two that have been shown here today, within my knowledge."

After the denial of the applicant's request for permission to tap the water main, he filed a petition in the Wayne circuit court, seeking a writ of mandamus directing "the Wayne county board of auditors, the county of Wayne, the board of water commissioners of the city of Detroit, and the city of Detroit, to forthwith authorize and allow your petition to tap the water main herein referred to at a point on Bradner

road north of the Five Mile road for the purpose of installing a six-inch main in said Plymouth Gardens subdivision No. 1, and authorizing and allowing your petitioner to tap said six-inch main for the purpose of supplying water to the residence herein referred to.'' The residence referred to was that of petitioner. The Wayne county board of road commissioners was also named a party defendant, being so named because of action taken on or about the 18th of October, 1938, by the Wayne county board of supervisors, which body adopted a resolution finding a necessity for the installation of water mains and a sewage system throughout the entire county of Wayne, the said resolution appropriating $200,000 of Kulp Act * road funds for installation of the said water and sewage system, said funds to be used in conjunction with a works progress administration grant from the United States government. It is set forth in the petition of plaintiff that by virtue of said resolution of the board of supervisors an application was made for a certain grant in the approximate sum of $2,000,000, and petitioner contends that by virtue of the authority vested in the board of supervisors and the appropriation and grant above referred to, the Wayne county board of road commissioners, in conjunction with the Wayne county board of auditors, is planning to install water mains throughout the county of Wayne. Appellant contends that the effect of this resolution is a declaration of policy on the part of the county of Wayne which precludes the Wayne county board of auditors from rejecting plaintiff's application.

A reading of the resolution by the board referred to indicates that the county of Wayne is interested in constructing a county-wide sewer and water sys-

* See Act No. 81, Pub. Acts 1933, amending Act No. 150, §§ 19, 19a, Pub. Acts 1927 (Comp. Laws Supp. 1933, § 3594).—Reporter.

tem project through the assistance of the works progress administration, and such other sources of revenue as shall become available; that this project is to be carried out in accordance with maps, plans and specifications prepared by the board of Wayne county road commissioners, approved by the board of Wayne county auditors, and gives authority to these two bodies to make agreements for service with the board of water commissioners of the city of Detroit. There is nothing in the record to indicate that any plans or specifications have been adopted, or that a grant from the Federal government is available, or will be available, and the appropriation of $200,000 to be expended in the construction of a county-wide sewer and water system project is entirely dependent upon the receipt of a grant and the approval of the plans by the works progress administration. We, therefore, determine that the Wayne county board of road commissioners is not a proper party defendant, and that plaintiff is not entitled to the relief sought by virtue of any action taken by the Wayne county board of supervisors in the attempted installation of a county-wide system of sewers and water mains.

After a hearing upon the petition for writ of mandamus, the writ was denied by the late Judge Allan Campbell, who filed the following opinion:

"It seems to me this case must be determined on the broad principle as to whether or not there was a discrimination, or whether or not there was an exercise of discretion. It is apparent from the testimony of Mr. Pelham, that the board of county auditors exercised discretion and declared a policy, and it seems to the court that this was done without respect to any individual, and might just as well have occurred no matter who was the applicant.

"It is a basic principle of law that in mandamus proceedings no court has the right to substitute its own discretion for the discretion of the duly elected officers.

"For these reasons, the petition for a writ of mandamus is denied."

From this order denying plaintiff's petition this appeal was taken. Plaintiff contends: first, that where a municipal corporation extends its water mains outside the corporate limits to serve county institutions, it is required by statute to retain such control of its water mains as will enable it to serve all patrons similarly situated along its water mains without discrimination; second, that the contract entered into between the board of water commissioners and the board of county auditors is void as against public policy by reason of the county board of auditors being permitted to control the municipality in its operation to the extent that the water commissioners must have the consent of said auditors to serve other applicants with water from this main; third, that the action of the county board of auditors in approving the tapping of the mains for some users and its refusal to permit tapping by appellant results in and constitutes an unlawful discrimination.

Constitution of 1908, art. 8, § 23, provides in part:

"Subject to the provisions of this Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof."

The waterworks system owned and operated by the city of Detroit, one of the defendants, is, of course, a municipal public utility, and is also indisputably a business enterprise. In its operation and manage-

ment, it has the same right and power to do those things connected with the operation of such business as would a private corporation. In *Andrews* v. *City of South Haven,* 187 Mich. 294 (L. R. A. 1916A, 908, Ann. Cas. 1918B, 100), we said:

"The power to engage in this municipal business activity for the public welfare is necessarily conferred in general terms. To go into details of administration and specify each particular thing which could or could not be done would be unwise and practically impossible. As to details and methods of conducting such authorized business, involving exercise of special knowledge and business judgment, there must be many implied powers. A strict, liberal, or narrow construction which might hamper the exercise of a reasonable discretion by the municipal authorities in such matters, because the power is given in few words, is not, with perhaps a few exceptions, the tendency of decisions in most jurisdictions. The courts as a rule are not disposed to interfere with the management of an authorized business, conducted by the municipal authorities presumably in the interest and for the benefit of the city and its inhabitants, unless dishonesty or fraud is manifest, or the vested power with its implied discretion has been clearly exceeded or grossly abused. In *Torrent* v. *Common Council of City of Muskegon,* 47 Mich. 115 (41 Am. Rep. 715), Justice CAMPBELL, in writing the opinion, foreshadowed the rule which, by the great weight of authority, is applied in construing general powers to a municipality to engage in certain modern business activities for the public welfare, saying in part:

" 'If cities were new inventions, it might with some plausibility be claimed that the terms of their charters, as expressed, must be the literal and precise limits of their powers. * * * There are many flourishing cities whose charters are very short and simple documents. Our verbose charters, except in the limitations they impose upon municipal action, are not as judiciously framed as they might be; and create mischief by their prolixity. But if we should assume that there is nothing left to implication, we should find the longest of them too imperfect to make city action possible.'

"In *City of Henderson* v. *Young,* 119 Ky. 224 (83 S. W. 583), where the issue was the right of the city to furnish electricity for light and other purposes to customers beyond the city limits, it is said:

" " 'In the management and operation of its electric plant, a city is not exercising its governmental or legislative powers, but its business powers, and may conduct it in the manner which promises the greatest benefit to the city and its inhabitants in the judgment of the city council; and it is not within the province of the court to interfere with the reasonable discretion of the council in such matters.' "

We think the quotation from the above-cited case effectually disposes of plaintiff's contentions one and two as hereinbefore outlined.

The water main in question was provided, the reservoir and booster station constructed, and the contract entered into by the water board with the board of auditors, primarily for the purpose of furnishing the Wayne County Training School with water from the water supply of the city of Detroit. It is reasonable to conclude that the city would not have been interested in furnishing the school with water upon any other conditions than those set forth in the contract. It is just as reasonable to conclude that the county of Wayne would not have gone to the expense it did in providing the means and equipment for furnishing the school with a water supply unless it could exercise some supervisory control over its own property, and have a voice in determining to whom and in what quantities water should be supplied through the equipment it had constructed at such a large expense.

We therefore hold that the board of water commissioners was acting within its legal rights in entering into the contract, and that in permitting the board of Wayne county auditors to exercise control over its operations, as in said contract provided, it did not illegally discriminate against the plaintiff or any other person who might desire to obtain a water

supply from the main, particularly in view of the fact, as the record discloses, that the city could not, without the use of the county's reservoir and booster station, furnish a supply to the training school. The contract is not against public policy, nor is it in contravention of the provisions of 1 Comp. Laws 1929, § 2445 *et seq.* (Stat. Ann. § 5.2581 *et seq.*), as claimed by appellant.

The contention of appellant that the action of the board of auditors in approving the tapping of the main for some users and its refusal to permit tapping by appellant results in and constitutes an unlawful discrimination, presents the question as to whether or not there was a discrimination or an exercise of discretion by the board.

It evidently has been the policy of the board of auditors to permit tappings from private homes, and if the written application of plaintiff for a permit to tap for his own residence was the only evidence before us as to his real purpose in securing a permit, we would be inclined to hold that a question of discrimination was involved. However, it appears that plaintiff was the owner of a subdivision consisting of 66 lots, located outside the city of Detroit, and that he had sold several of them, agreeing in the contracts of sale to establish a water line through the property. These facts were ascertained by the county engineer and were imparted to the board of auditors with the request that a policy be adopted by the board with reference to the furnishing of water to subdivisions. Pursuant to this report and request, a policy was adopted by the board of auditors not to grant any applications where a subdivision was involved.

We find that it clearly appears from the record that the board of auditors were deeply concerned with the future of the training school water line and with the expense that would be incurred by the addi-

tion of more consumers to the line, and that in refusing to grant plaintiff the permit requested, in view of all the circumstances involved, were not discriminating against him, but were acting in the exercise of their discretion.

It is clearly apparent to us that the adoption of this policy by the board was done without respect to any individual.

As was aptly said by the trial court,

"It is a basic principle of law that in mandamus proceedings, no court has the right to substitute its own discretion for the discretion of the duly elected (or appointed) officers."

In *Veldman* v. *City of Grand Rapids,* 275 Mich. 100, 111, we said:

"So long as the power to govern the city and control its affairs is vested by the people in local municipal officers in pursuance of law, neither this court nor any other may assume to dictate the local governmental policy of the municipality. The power and authority is vested in the commission to govern as its discretion dictates so long as its action is not contrary to law or opposed to sound public policy. So long as the city commission acts within the limits prescribed by law, the court may not interfere with its discretion."

See, also, *Upjohn* v. *Board of Health of Township of Richland,* 46 Mich. 542, 545.

After a careful examination of the entire record and a review of the authorities cited, we reach the conclusion that the trial court properly denied plaintiff's application for the writ.

Judgment affirmed, with costs to appellees.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.