KALAMAZOO MUNICIPAL UTILITIES ASSOCIATION *v.* CITY OF KALAMAZOO.

1. MUNICIPAL CORPORATIONS—SALE OF PROPERTY—OPPORTUNITY FOR COMPETITION.

An "opportunity for competition" in compliance with city charter in the sale of a municipal light utility was afforded by city, where offer of defendant public utility company was held open 75 days with attendant wide publicity, sealed bids not being specifically required therefor (Kalamazoo City Charter, § 52 [b]).

2. SAME—SALE OF LIGHT UTILITY—OPPORTUNITY FOR COMPETITION— CHARTERS.

Home-rule city commission's acceptance of offer of sole bidder for city light utility did not violate pertinent provisions of city charter, where it followed a "straw vote" election, the offer was kept open 75 days and wide publicity given to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur, Public Works and Contracts § 24 *et seq.*
[2] 43 Am Jur, Public Works and Contracts § 29.
[2] Requirement that municipal contracts be awarded on competitive bidding as applicable to contracts for public utility (gas, electricity, and water). 128 ALR 168.
[4, 5] 37 Am Jur, Municipal Corporations § 142.
[6, 15] 37 Am Jur, Municipal Corporations §§ 114, 115.
[7, 8] 37 Am Jur, Municipal Corporations §§ 46, 51.
[10–13, 16] 38 Am Jur, Municipal Corporations § 568.
[10–13, 16] Power of municipality to sell, lease, or mortgage municipal waterworks, gas or electric light plant, or interest therein. 39 ALR 216.
[14] 37 Am Jur, Municipal Corporations § 52.

proposed sale and opponents of sale have not even alleged the existence of anyone interested in competing or that anyone has been denied an opportunity to compete (Kalamazoo City Charter, § 52).

3. Statutes—Amendment—Repeal.

An act which amends, modifies or repeals a law should be of equal dignity with the act which enacts or establishes the law.

4. Words and Phrases—Resolution.

A resolution is not a law or an ordinance but merely the form in which a legislative body expresses a determination or directs a particular action.

5. Same—Ordinances—Resolution.

An ordinance prescribes a permanent rule for conduct of government, while a resolution is of special or temporary character.

6. Municipal Corporations—Public Health—Police Powers—Public Utilities.

A municipality acts as an agent of the State in matters of public health, of police and numerous other activities, but it owns waterworks and electric light plants as proprietor, and its management of them are matters of local concern.

7. Same—Council—Electors.

A municipal council and the electors of the municipality each exercise part or the whole of the municipal powers, when, and only when, it is so provided by law.

8. Same—Distribution of Powers Between Council and Electors.

The electors of a home-rule city cannot, by inference, take away from the city commission powers expressly granted by the city charter.

9. Same—Electors—Business Property.

The voting portion of the public has no vested interest in the property acquired and held by the city for business purposes.

10. Same—Home-Rule Cities—Sale of Utility—Statutes.

Provision of home-rule city act restricting sales of municipal utility assets to those situations only where the sales proceeds are to be used in procuring a similar capital asset or for deposit in sinking fund for payment of outstanding debts due to city's acquirement of the utility applies to governmental, not business, enterprises in which the city is engaged, as a city should not be required to continue a business enterprise indefinitely merely because it saw fit once to engage in it (CLS 1954, § 117.4e[3]).

11. SAME—HOME-RULE CITIES—ELECTRIC UTILITY PLANT—DISCON-
TINUANCE OF SERVICE—SALE OF PLANT—CHARTERS—STATUTES.

The simultaneous discontinuance of a city-owned electric utility
and the sale of the utility as a going concern *held*, permissible
under home-rule city charter, so far as the home-rule city act
is concerned, since there is no legal necessity for suspending
the service afforded by such a plant in meeting the needs of
its customers and the best way to sell such a plant was found
to be as a going concern (CLS 1954, § 117.4e[3]; Kalamazoo
City Charter, §§ 52, 97).

12. SAME—SALE OF ELECTRIC UTILITY PLANT BY CITY COMMISSION.

Home-rule city's commission had power to sell city electric plant
and abolish policy of municipal ownership under charter pro-
vision empowering it to sell city's property, other than that
used for governmental purposes, without subjecting matter
to approval of 3/5 of the electors (CLS 1954, § 117.4e[3];
Kalamazoo City Charter, §§ 52, 97).

13. SAME—SALE OF ELECTRIC UTILITY—ORDINANCES.

The city commission had the power to dispose of city electric
plant which had been acquired prior to adoption of present
city charter containing permissive provision for establishment
of such public utility by ordinance, where neither the pleadings
nor record show the plant was established by an ordinance and
no statutory or ordinance provision is shown which requires
the city commission to exercise its contract and disposal pow-
ers by ordinance rather than by resolution (CLS 1954, § 114e
[3]; Kalamazoo City Charter, §§ 52, 97, 159).

14. SAME—STATUTES—RESOLUTION.

If no statute prescribes a method of action and no charter pro-
vision requires it, when the action is merely declaratory of the
will of the municipal corporation in a given matter and is in
the nature of a ministerial act, it is proper to act by res-
olution.

15. SAME—PUBLIC UTILITY HELD IN PROPRIETARY CAPACITY.

A city holds and manages its municipal utility in a proprietary
and administrative capacity, as distinguished from its ex-
ercise of governmental or legislative powers.

16. SAME—SALE OF ELECTRIC PLANT—CITY COMMISSION.

Sale of city electric plant by direct city commission action, pur-
suant to its resolution rather than by ordinance, was proper
under city charter empowering city manager to take such action
until the commission should otherwise prescribe (Kalamazoo
City Charter, §§ 52, 97).

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted January 6, 1956. (Docket No. 40, Calendar No. 46,649.) Decided April 2, 1956. Rehearing denied May 14, 1956.

Bill by Kalamazoo Municipal Utilities Association, an unincorporated association, and several individuals, as taxpayers, against the City of Kalamazoo, a municipal corporation, its mayor, clerk and city manager to restrain sale and transfer of city light plant to Consumers Power Company, a Maine corporation, which upon petition, is added as party defendant. On motions, bill dismissed. Plaintiffs appeal. Affirmed.

*Edward J. Ryan (Howell Van Auken,* of counsel), for plaintiffs.

*Morris & Culver (David Morris,* of counsel), for defendants City of Kalamazoo and officials.

*Farrell, Folz, Paulson & Palmer, W. R. Roberts* and *S. H. Redner,* for defendant Consumers Power Company.

*Amicus Curiae:*

*Linsey, Shivel, Phelps & Vander Wal (R. M. Shivel,* of counsel), for Michigan Municipal Utilities Association.

REID, J. By their bill of complaint, plaintiffs request the court to enjoin the sale by the city of Kalamazoo (a home-rule city) to the Consumers Power Company of title to the city light utility for not less than $1,625,000. The bill of complaint recites the resolution adopted by the city commission authorizing such sale. The resolution authorized the

city manager and city attorney to negotiate the details of the sale and to prepare papers necessary to effectuate the discontinuance of the utility, the acceptance of the offer of the Consumers Power Company of $1,625,000 and the transfer of the title of the city light utility and most of its tangible real and personal property to the Consumers Power Company. From order granting defendants' separate motions to dismiss, plaintiffs appeal.

Plaintiffs allege that the resolution in question which was adopted by a 5-to-1 vote on July 5, 1955, is void for 8 reasons:

1. That the resolution is in violation of section 52 (a) and (b) of the city charter and therefore *ultra vires* and *void,* competitive bidding being absent.

2. That the city under the provisions of the city charter including section 97 is not authorized to sell its electric utility in the manner attempted in this case.

3. That the city is not authorized under the State Constitution and under the city home-rule act of the State, to sell its city-owned electric utility by authority of less than 3/5 approval vote by the electors.

4. That the city is not authorized under the city home-rule act to sell its electric utility plant in a transaction containing no provision for the use of the sale proceeds to purchase similar capital assets or deposit into sinking fund to pay bonds against the utility.

5. That the city is not permitted under said home-rule act to sell assets devoted to operation of its city-owned electric utility in cases where the use of such assets for the purpose of the utility had not previously been discontinued.

6. That the city in the absence of specific statutory or charter grant or power, is not authorized to sell its property devoted to public-utility use.

7. That the commission of the city has no separate competence of its own to authorize the sale and discontinuance of the city electric utility which had been originally acquired and established by vote of the city electors.

8. That the action of the city commission in effectuating a sale of said city's electric utility should have been accomplished by ordinance subject to referendum to voters rather than by commission resolution.

Plaintiffs prayed the court to exercise its equitable relief power by the granting of an injunction restraining and forbidding the proposed sale in question. Among other things, the bill recited that the city's light plant is, in substance, a new plant with modern equipment of 3,500 kilowatts generating capacity, installed within the last 5 years, sufficient to meet peak loads, with adequate standby equipment of similar capacity comprising older units; that the plant is debt free, so far as concerns any outside creditors, is efficient in character and supplies current to customers at lower cost than Consumers Power Company, and in addition supplies electric current for various municipal purposes such as lighting city buildings and the like; and that the present reproduction costs and the reproduction cost less depreciation of said plant are $3,389,750 and $2,236,325, respectively.

The light plant of the city includes an underground system of over 42,000 feet of conduits and contains primary power cables besides certain laterals. The plant includes large quantities of personal property such as generating equipment, transformers, transmission lines and the like, besides considerable real estate such as the building housing power plant and underground conduits.

Under the terms of the sale in question, the lateral conduits containing only ornamental street lighting

and traffic signal cables were not to be included. The city was to retain specific conduits for ornamental street lighting and traffic signal cables. The appraised reproduction cost less depreciation of the underground conduits to be retained by the city is $70,760, according to Black and Veatch report received in evidence by consent.

On or about April 21, 1955, the city commission received the offer of Consumers Power Company of $1,625,000. On April 25, 1955, the city commission for the purpose of receiving the advice of the qualified electors as to their attitude, determined to submit to the voters of the city at a special election held June 28, 1955, the following question: "Would you favor the sale of the city light utility at a price of not less than $1,625,000?" The vote resulting from this advisory election was "yes—3,160" "no—3,098." Thereafter and on July 5, 1955, the city commission adopted the resolution in question. There was as yet, no agreement to sell to Consumers. Thus the city held the offer of Consumers open 75 days and gave the matter wide publicity before acceptance, altogether affording any would-be competitor "opportunity for competition." The city charter did not prescribe any specific method by which the opportunity for competition should be afforded. Sealed bids were not necessarily required under section 52 (b).

Section 52 of the city charter is as follows:

"(a) The city commission shall designate some officer of the city, other than the auditor or treasurer, to act as its purchasing agent, by whom all purchases of supplies for the city shall be made, and who shall approve all vouchers for the payment of the same. Said purchasing agent shall also conduct all sales of personal property which the city commission may authorize to be sold as having become unnecessary or unfit for the city's use. . . . .

"(b) All purchases and sales shall conform to such regulations as the city commission may from time to time prescribe, but in either case, if an amount in excess of $500 is involved, opportunity for competition shall be given. Where purchase or sales are made on joint account of separate departments, the purchasing agent shall apportion the charge or credit to each department. He shall see to the delivery of supplies to each department.

"(c) Until the city commission shall otherwise provide, the city manager of the city shall act as such purchasing agent."

Section 97 is as follows:

"The city shall have, and it is hereby given the power to purchase or condemn private property, within or without the city, for any public use within the scope of its power. To that end the city commission, subject to the general laws of the State, whenever it deems the same essential for the welfare of the inhabitants of the city, may acquire by gift, purchase, condemnation or otherwise, the necessary property for the purpose in view. The city commission, subject to the general laws of the State, shall have the power to hold and improve such property, and to convey or dispose of the same."

First, plaintiffs claim a violation of the city charter of section 52 (a) and (b) as governing the proposed sale of the municipal light plant and insist that bidding is required and that it is mandatory under the words in (b), "opportunity for competition shall be given." For the mandatory character of that requirement, plaintiffs cite *City of Saginaw* v. *Consumers Power Company*, 213 Mich 460; *Knights of the Iron Horse* v. *City of Detroit*, 300 Mich 467; and *Sault Ste. Marie City Commission* v. *Sault Ste. Marie City Attorney*, 313 Mich 644, as sustaining plaintiffs' proposition that the charter provision in question is mandatory, not directory. Also, plain-

tiffs claim the case of *Sault Ste. Marie City Commission v. Sault Ste. Marie City Attorney* is authority for the proposition that the proposed sale is void because of lack of competitive bidding; however, at pp 662, 663, it appears that the city charter of Sault Ste. Marie in question in that case requires that the contract among other things shall be "upon competitive bids therefor," whereas the language of the Kalamazoo charter in this case, section 52 (b), is "opportunity for competition shall be given." In the *Knights of the Iron Horse Case,* the charter of the city of Detroit required competitive bids, a provision deemed mandatory (pp 472, 473, 478). Involved in the *Sault Ste. Marie City Commission Case* was a proposition for purchase, not sale.

The defendant city and its officials contend that section 52 applies only to the purchasing agent's method of operation, and is not a limitation upon the city commission; that the purchasing agent is limited to dealing in personal property and supplies and not real estate; further, that the purchasing agent is not required to go through the formal process of taking bids but must simply give opportunity for competition. Defendants further cite the fact that the "straw vote" election of June 28th named only the price and did not require that the sale should be to Consumers Power Company; that the election was widely publicized (6,258 votes were cast); and that there is no allegation of existence of anyone interested in competing, and no allegation that anyone was denied "opportunity for competition."

The acceptance of Consumers Power Company's offer did not precede but followed the election. We are constrained to hold that the city by its acceptance of the bid of Consumers Power Company in question did not violate any of the provisions of section 52 of the charter above recited.

Plaintiffs' objections to the sale under the second (or general) heading fall for discussion under the other headings.

Plaintiffs claim under the third question involved that the city under the State Constitution and city home-rule act of the State is not authorized to sell the electric utility without approval by not less than 3/5 of the voters voting, citing as follows:

"Nor shall any city * * * acquire any public utility * * * unless such proposition shall have first received the affirmative vote of 3/5 of the electors of such city * * * voting thereon." Const (1908), art 8, § 25.

"Sec. 4-f. Each city may in its charter provide:
* * *

"(3) * * * For the acquirement * * * of public utilities for supplying * * * light, * * * power * * * to the municipality and the inhabitants thereof, * * * Provided, however, That no such public utility shall be so acquired unless the proposition to do so shall have first received the affirmative vote of 3/5 of the electors of such city voting thereon." CL 1948, § 117.4f (3) (Stat Ann 1949 Rev § 5:2079).

The electric utility in question was acquired and established in 1894, upon a 56% favorable vote, a sufficient vote at that time under the Constitution of 1850. On April 1, 1912, after the adoption of the present Constitution of Michigan (1908), the electors of Kalamazoo by a 64% favorable vote, approved a bond issue to borrow $140,000 to renew "lighting work of said city including adequate equipment therefor."

Plaintiffs argue that inasmuch as the requisite vote of electors for establishing a municipal electric plant in the first instance must now be 60% or more, under both the present Constitution and the home-

rule act, by inference the same vote is necessary to abolish the use of such utility after original acquisition. Plaintiffs cite *Chicago & N. P. R. Co.* v. *City of Chicago,* 174 Ill 439, 495 (51 NE 596, 598) (cited with approval by this Court in the *City of Saginaw Case, supra*), which *Chicago Case* among other things recites that the act which amends, modifies or repeals the law should be of equal dignity with the act which enacts or establishes the law. A resolution is not a law or an ordinance but merely the form in which a legislative body expresses a determination or directs a particular action. An ordinance prescribes a permanent rule for conduct of government, while a resolution is of special or temporary character. However, the city electric plant was not acquired under an ordinance and the resolution of acceptance of Consumers' offer repealed no ordinance.

Defendants cite *Curry* v. *City of Highland Park,* 242 Mich 614, 619, in which we say:

"This Court in common with nearly every court in the Union is in accord with the Pennsylvania court in holding that the municipality holds its lighting plant and waterworks as a proprietor and not as a governmental agency."

On behalf of the defense it is argued and cited as follows:

"The city home-rule act adopted in 1909 (PA 1909, No 279) contained a mandatory requirement in section 5e thereof which specifically restricted the sale of 'any real estate used in carrying on a public utility or any part thereof * * * unless approved by 3/5 of the electors,' * * * et cetera. This specific restriction remained in the home-rule act from 1909 to 1923, and was then *deleted* by PA 1923, No 119.

"In addition to repeal in 1923, of this specific legislative restriction (no sale of public utility by city

without electoral approval), the legislature, by PA 1949, No 207, *repealed* [italics supplied] the general restriction in the home-rule act against selling 'any property of a value in excess of $2 per capita * * * unless approved by 3/5 of the electors voting thereon.'"*

In the brief of the *amicus curiae* it is argued that PA 1923, No 119, which repealed that portion of the home-rule act requiring a 3/5 vote of the electors voting to sell any real estate used in carrying on of a public utility, and that PA 1949, No 207, repealing that portion of the home-rule act prohibiting the sale of any property in excess of the value of $2 per capita unless approved by a 3/5 vote of the electors must be construed to be prospective in operation only and that the legislature has no constitutional authority to affect the vested rights of the voters.

In *Attorney General* v. *City of Detroit,* 225 Mich 631, 637, this Court held:

"In matters of public health, of police and numerous other activities, the municipality acts as an agent of the State. It owns waterworks and electric light plants as *proprietor,* and its management of them are matters of local concern as are numerous other activities pertaining to the locality as distinguished from the State at large." (Italics supplied.)

In *City of Niles* v. *Michigan Gas & Electric Co.,* 273 Mich 255, 266, we say:

"An attempt to differentiate between the common council and the council and the electors, as constituting a city or village, in finding municipal powers is futile. Each exercises part or the whole of the municipal powers when, and only when, it is so provided by law."

---

* Provisions contained in these acts are now to be found in CLS 1954, §§ 117.4e(3), and 117.5(e) (Stat Ann 1955 Cum Supp §§ 5.2078 [3] and 5.2084[e]).—Reporter.

In the case at bar, the electors being without any express authority so to do, cannot by inference take away from the city commission powers expressly granted by section 97. The voting portion of the public has no vested interest in the property acquired and held by the city for business purposes.

Fourth, plaintiffs in their brief cite from section 4-c of the city home-rule act:

"Each city may in its charter provide: * * *

"(3) For the maintenance * * * operation, of its property and upon the discontinuance thereof to lease, sell or dispose of the same subject to any restrictions placed thereupon by law: Provided, That on the sale of any capital asset of the municipally owned utility the money received shall be used in procuring a similar capital asset, or placed in the sinking fund to retire bonds issued for said utility." CLS 1954, § 117.4e (3) (Stat Ann 1955 Cum Supp § 5.2078[3] ).

Plaintiffs claim that the effect of the above proviso is to restrict sales of municipal utility assets to those situations only where the transaction provides for the use of sales proceeds in procuring of a similar capital asset or for deposit in the sinking fund for payment of outstanding debts due to city's acquirement of the utility. However, it seems to us clear that the said proviso from portion (3) including the other language quoted with the proviso, all refer to property owned and operated by the city for governmental purposes, whereas in this case the property in question is owned by the city only for business purposes. To construe the statute otherwise would in practical effect require the city to maintain a business activity without end or lose all the proceeds of assets bought and used by the city for that or similar business enterprise. In other words, plaintiffs' construction would require the city to continue indefinitely (in practical effect) in any

line of business once it engages in that line.  We find such construction improper and that the defendant city is not obligated nor required on the sale of the electric plant, a business enterprise, not governmental, to use the money received to procure a similar capital asset or to be placed in a sinking fund to retire bonds issued for said utility.

We feel required to construe the provisions in the city charter in such manner that the city may sell and transfer the electric plant under conditions that shall not of necessity cause a temporary or indefinite suspension of service of the plant to meet the needs of its customers.  The same reasoning applies to the plaintiffs' fifth claim that the city is not permitted under the home-rule act to sell assets devoted to operation of its city-owned electric utility in cases where the use of such assets for the purpose of the utility had not been previously discontinued.  The city commission by the resolution of July 5, 1955, recited, "that the operation of said utility be discontinued, that said plant be disposed of and that said offer be accepted."

The trial court found, "The best way to sell a light plant is as a going concern," in other words, instead of shutting it down over some length of time and then having to sell it "as a defunct concern." The trial court further found that "the discontinuance and the sale can be simultaneous."

Plaintiffs cite *Sebewaing Industries, Inc.,* v. *Village of Sebewaing,* 337 Mich 530.  However, the *Sebewaing Case* involved the powers of a village not vested with home-rule powers, and the charter of a village is necessarily different from the charter of the city of Kalamazoo, a home-rule city.  Moreover, the city commission by section 97, hereinbefore quoted, is vested with authority subject to the general laws of the State "to hold and improve such property, and to convey or dispose of the same."  The

discontinuance of the use of the property and transfer to the vendee under the terms of the sale may be simultaneous, and in the ordinary course of events are necessarily required to be simultaneous.

The answer to the sixth question is that the city commission has power under section 97 to convey or dispose of the property in question, as elsewhere herein discussed.

Under the seventh question involved, plaintiffs claim that the Kalamazoo city commission does not possess power "within its own separate competence" to sell the city electric plant and abolish the policy of municipal ownership, which policy plaintiffs claim was first established in 1894 by a vote of the city electors and that the electors in 1912 approved the continuation of this utility by a favorable vote upon the proposition to borrow $140,000 under bond issue for the purpose of renewing the lighting works, et cetera. Plaintiffs cite in favor of this seventh proposition the case of *White* v. *City of Grand Rapids,* 260 Mich 267, which case, however, was not a case of a sale but a case of a lease of the city plant. Plaintiffs in the *White Case* denied that the city commission in that case had power to make the contract, but the ruling by the trial judge that the city commission had power to make the contract (p 275) was approved by this Court.

Under their eighth question, plaintiffs in this case claim that the action of the city commission effectuating a sale of the city's electric utility should have been accomplished by ordinance subject to referendum to voters rather than by commission resolution. Plaintiffs assert that the trial court in answer to this question relied principally on the case of *Yarbrough* v. *Donaldson,* 67 Okla 318 (170 P 1165), in which the Oklahoma court held that the city's resolution for sale of electric plant was not an exercise of a legislative function, but rather it was found that the city

was administering an existing statute of that State giving the city express power to dispose of its property.  Plaintiffs would differentiate the Michigan law from the Oklahoma statute on this point.  Plaintiffs cite from defendant city's charter, section 159, which is as follows:

"The city commission by ordinance may prescribe, or the people by ordinance duly initiated and approved under the provisions of this charter, may prescribe the procedure to acquire any public utility, enterprise or service."

Section 159 is permissive as to business activities. The city commission seems to have been satisfied to operate its plant under section 97 without enacting an ordinance covering the subject.

Plaintiffs further assert that an ordinance may not be repealed by resolution, that being the law of Michigan, contrary to the law of Oklahoma.  Plaintiffs further cite in support of this claim, *Chicago & N. P. R. Co.* v. *City of Chicago, supra;* and *City of Saginaw* v. *Consumers Power Company, supra.* Plaintiffs claim that if their other objections to the validity of the resolution accepting Consumers' bid were found insufficient, still plaintiffs have a sufficient ground for injunctive relief withholding consummation of the sale pending outcome of referendum on the commission action.

Contrary to plaintiffs' contention, the pleadings do not allege nor does the record show, that the light plant in question was established by ordinance.  The charter with section 159 was not in existence when the plant in question was established in 1894 and additions made in 1912.  The original charter was adopted February 4, 1918.  We find that the power of disposal of the light plant is vested by the city charter in the city commission under section 97 of the charter.  Plaintiffs failed to cite any statutory

or charter provision requiring the city commission to exercise its contract and disposal powers by ordinance rather than resolution.

"If no statute prescribes a method of action and no charter provision requires it, when the action is merely declaratory of the will of the municipal corporation in a given matter and is in the nature of a ministerial act, it is proper to act by resolution." *Case* v. *City of Saginaw*, 291 Mich 130, 132. (Syllabus 10.)

A city holds and manages its municipal utility in a proprietary and administrative capacity, as distinguished from its exercise of governmental or legislative powers. *Nelson* v. *County of Wayne*, 289 Mich 284, 296–298. Defendants (city's brief) direct attention to section 52 (c) of the charter, "Until the city commission shall otherwise provide, the city manager shall act as such purchasing agent."

In the instant case the city commission did not otherwise provide but did take direct action by the commission itself. We affirm the trial court's answer "no" to plaintiffs' eighth question.

The decree of the trial court ordered dissolution of the injunction which had been issued, and dismissed the bill of complaint and amendment to the bill of complaint. That decree is affirmed. Costs to defendants.

DETHMERS, C. J., and SHARPE, SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.