CLARK *v.* CITY OF SOUTH HAVEN.

1. MUNICIPAL CORPORATIONS—SALE OF PUBLIC UTILITY—DISPOSITION OF PRIVILEGE—VIOLATION OF CITY CHARTER.

Home-rule city charter prohibiting city from in any way disposing of any privilege belonging to any municipally owned public utility unless approved by affirmative vote of 3/5 of the electors voting thereon at a regular or special election *held,* to prohibit city, which owned an electric generating plant and distributing system furnishing electric power to the city and local customers, from entering contract to purchase all of its electric power from defendant power company, absent voter approval as provided in said charter, since carrying out the contract would require disuse of the municipally owned public utility and disposition of its privilege to generate electricity, contrary to the express provisions of its charter (South Haven City Charter, § 13.5).

2. CONTRACTS — MUNICIPAL CORPORATIONS — MUNICIPALLY OWNED PUBLIC UTILITY—VIOLATION OF CITY CHARTER.

Contract between defendant city and defendant power company, whereby defendant city agreed to purchase all of its electric power from defendant power company for a period of 10 years *held,* void, where said city owned an electric generating plant and distribution system furnishing electric power for the needs of the city and local consumers, the city charter prohibited the city from in any way disposing of any privilege belonging to any municipally owned public utility unless approved by 3/5 of the electors voting thereon at a regular or special election, and the contract was not submitted to or approved by the electors, since carrying out said contract would, for the term involved, render the municipally owned

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 38 Am Jur, Municipal Corporations §§ 487, 568.
Power of municipality to sell, lease, or mortgage public utility plant or interest therein. 61 ALR2d 595.
[4] 5 Am Jur 2d, Appeal and Error § 1009.

public utility useless and prohibit the city from exercising its privilege of generating electricity, in violation of the express provisions of the city charter (South Haven City Charter, § 13.5).

3. MUNICIPAL CORPORATIONS—SUMMARY JUDGMENT—PUBLIC UTILI-
TIES—VIOLATION OF CITY CHARTER.

Summary judgment for defendants in action to enjoin city from carrying out the provisions of a contract to purchase all of its electric power from defendant power company for a period of 10 years, which contract was not submitted for voter approval, *held*, error, and cause is remanded for entry of summary judgment for plaintiff, where the carrying out of the contract would have rendered useless an electric generating plant and distribution system owned by the city which furnished electric power for the needs of the city and local consumers, would have prohibited the city from exercising its privilege of generating electricity for the term of the contract in violation of express charter provisions barring the city from in any way disposing of any privilege belonging to its municipally owned public utility except by affirmative vote of 3/5 of the electors voting thereon at a regular or special election (South Haven City Charter, § 13.5).

4. COSTS—APPEAL AND ERROR—PUBLIC QUESTION—MUNICIPAL ELEC-
TRIC PLANT.

No costs are allowed on appeal, where a public question is involved in proceeding to enjoin city from shutting down a municipal electric generating plant.

Appeal from Van Buren; Anderson (David, Jr.), J. Submitted Division 3 March 7, 1967, at Grand Rapids. (Docket No. 2,449.) Decided November 8, 1967. Rehearing denied December 27, 1967. Leave to appeal denied March 6, 1968. 380 Mich 760.

Complaint by Benjamin F. Clark against the City of South Haven, Leonard J. Harris, City Manager, and Indiana & Michigan Electric Company, an Indiana corporation, to enjoin defendant city from shutting down a municipal electric generating plant and from purchasing all of its electric power from defendant Indiana & Michigan Electric Company. All parties moved for summary judgment. Sum-

mary judgment for defendants. Plaintiff appeals. Reversed and remanded for entry of summary judgment for plaintiff.

*Edward J. Ryan,* for plaintiff.

*William J. Brown* and *Miller, Canfield, Paddock & Stone* (*Robert E. Hammell,* of counsel), and *Gilbert E. Gove,* for defendants City of South Haven and Leonard J. Harris.

*Mollison, Hadsell & Cary,* for defendant Indiana & Michigan Electric Company.

Burns, J. Plaintiff submitted 6 assignments of error, but for our disposition of this matter it is only necessary to discuss the admitted facts and controverted law related to the first claim of error.

The city of South Haven, a home-rule city, is the owner of an electric generating plant and distribution system which furnishes electric power for the needs of the city and local consumers. This power utility has been in continuous existence and operation for approximately 50 years and has had a progressively successful operation. In 1964 the South Haven board of public works announced that additional power capacity would be needed. Thereafter the city considered various possibilities designed to meet the increased demand on the municipal generating system. One such plan resulted in an advisory election in February of 1965, but it failed to gain sufficient public support.[1]

The proposal finally adopted by the city council was a contract whereby South Haven would be ob-

---

[1] It should also be pointed out that plaintiff's complaint alleged that "on November 8, 1965, at a special election in the city of South Haven, a proposed sale of the entire city's electric system to Indiana & Michigan [Electric Company]" was rejected by the electorate, but this allegation was denied by the city.

ligated to purchase and receive from Indiana & Michigan Electric Company all of the electric capacity and energy which the city may require for a period of 10 years. A civil action to enjoin the city from entering into this contract was commenced by 3 persons, but their petition was denied and the contract was subsequently executed. On January 3, 1966, motions or resolutions were adopted authorizing the city manager to incur financial obligations in connection with the "mothballing" of the city's electric generating plant.

Plaintiff's complaint, *inter alia,* alleged that the threatened action to shut down the municipal electric generating plant was in violation of section 13.5 of the charter for the city of South Haven, which provides in part:

"Unless approved by the affirmative vote of three-fifths of the electors voting thereon at a regular or special election, the city shall not sell, exchange, lease or in any way dispose of any property, easement, equipment, privilege or asset belonging to and appertaining to any municipally owned public utility which is needed to continue operating such utility. All contracts, negotiations, licenses, grants, leases or other forms of transfer in violation of this section shall be void and of no effect as against the city."

Motions for summary judgment were filed by all 4 parties, and in response thereto, the circuit judge held that plaintiff's complaint failed to state a claim upon which relief could be granted. (GCR 1963, 117.2[1].) The circuit judge stated:

"Plaintiff claims that shutting down the power plant is tantamount to disposition thereof and requires a three-fifths vote of the electors. The court holds that such a shutting down is not an action requiring a vote of the electors under the provisions of the charter."

The basic problem in this case is not the question of whether South Haven has the power to enter into a contract for the purchase of electric energy; rather, it is the question of what effect a contract, for the purchase of 100% of the city's power needs, has on the existing electric plant. In essence, plaintiff claims that the performance of the contract in question results in the disposition of a privilege, *i.e.*, the privilege of generating municipal electric power.

South Haven was first authorized to acquire and operate its electric plant more than 50 years ago when South Haven was a fourth-class city. See *Andrews* v. *City of South Haven* (1915), 187 Mich 294. As noted previously, South Haven is now a home-rule city. Under the past[2] and present[3] law as it related or relates to South Haven's acquisition of a generating plant, the expenditure of funds for this purpose depended upon voter approval. Without such approval the city could not implement the construction of a municipal generating plant. The grant, right, or privilege to generate electricity, in effect, came directly from the people. The city council's action in this case, contracting with Indiana & Michigan Electric Company, renders useless, unavailable, and inoperative a major community asset. While this does not constitute a complete and final severance of the ties of ownership, it does amount to one way of disposing of a privilege, because the city has transferred its privilege of supplying power to Indiana & Michigan Electric.

The words of section 13.5 of the charter, "or in any way dispose of any * * * privilege * * * belonging to * * * any municipally owned public

2 See 1908 Const, art 8, § 25; CL 1897, § 3260 and CL 1915, § 3178, CL 1929, § 2102, CL 1948, § 107.3 (Stat Ann 1949 Rev § 5.1897).

3 See 1963 Const, art 7, § 25; CLS 1961, § 117.4f, as amended by PA 1965, No 116 (Stat Ann 1965 Cum Supp § 5.2079).

utility," are broad and comprehensive. By rendering
the plant in question *useless* for the above pur-
pose, the city has disposed of the most important
portion of a "public utility." Accompanying the
words, "or in any way dispose of," is "lease," which,
in our minds, indicates that even the disuse of a
public utility for a term of years must be approved
by the electorate.

In *Kaplan* v. *City of Huntington Woods* (1959),
357 Mich 612, we find that the city of Huntington
Woods owned a number of lots facing Woodward
avenue (US–10) and entered into a contract with
neighboring owners restricting the use of such lots
to single dwelling purposes. Subsequently, the city
decided to construct a playground thereon, and the
adjoining property owners sought to prevent the
implementation of this decision. The Supreme Court
quoted chapter 2, § 2 of the charter of the city of
Huntington Woods, the relevant portion of which
reads:

"'No *property* of a value in excess of $2 per
capita    *    *    *    shall be *sold* unless approved
by 3/5 of the electors voting thereon at a general
or special election.'" (Emphasis supplied.)

Notwithstanding the fact that Huntington Woods
still owned the lots, the Court held that the agree-
ment was void because of a failure to comply with
the charter requirements, and that (pp 617, 618):

"Under the above authorities, the imposition of
a restriction is the loss of the use of a valuable
property right, and it would appear that such right
was disposed of by the city of Huntington Woods
either as a sale or a gift."

Such disposition of a property right is inseparably
related to the situation in our case where a specific

use of property becomes unduly restricted by contractual commitments.

In *Kalamazoo Municipal Utilities Association* v. *City of Kalamazoo* (1956), 345 Mich 318, it appears that the citizens of another home-rule city (Kalamazoo) authorized the city's acquisition of public utilities for supplying light and that, years later, the city decided to dispose of the electric plant. The plaintiff in that case contended that the city was not authorized to sell without approval by not less than 3/5 of the voters voting. The Supreme Court held that a city holds and manages its municipal utility in a proprietary and administrative capacity and that (p 330):

"In the case at bar, *the electors being without any express authority so to do,* cannot by inference take away from the city commission powers expressly granted by section 97 [of the Kalamazoo city charter]. The voting portion of the public has no vested interest in the property acquired and held by the city for business purposes." (Emphasis supplied.)

Unlike the electors of Kalamazoo, when the voters of South Haven granted the privilege to generate power, they were not content to divest themselves of every managerial function normally associated with the operation of a business concern. By their city charter they have retained express power over the discontinuance of their public utility. The contract in question has the effect of violating section 13.5 of the charter for the city of South Haven and is therefore void unless approved by the voters as required by the charter. Defendants' motion for summary judgment should not have been granted. Plaintiff's motion for summary judgment should have been granted.

Reversed and remanded for entry of judgment in accordance with this opinion. No costs, a public question being involved.

FITZGERALD, P. J., and HOLBROOK, J., concurred.