W. A. FOOTE MEMORIAL HOSPITAL, INC v

CITY OF JACKSON HOSPITAL AUTHORITY

OPINION OF THE COURT

1. COURTS—CERTIFIED QUESTIONS—SUPREME COURT—CONSTITUTIONAL LAW—GOVERNOR PROCEDURE—COURT RULES.

Procedure whereby the Governor by an executive message requests that, pursuant to a General Court Rule providing for certified questions, the Michigan Supreme Court consider the constitutionality of an act is permitted if the question is of such public moment as to require early determination (GCR 1963, 797).

2. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—CONSTITUTIONAL LAW.

The Hospital Finance Authority Act is constitutional (MCLA 331.31 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 219.
[2, 5, 6, 8, 17, 25] 40 Am Jur 2d, Hospitals and Asylums §§ 2, 3.
[3, 18, 27] 16 Am Jur 2d, Constitutional Law §§ 142, 143, 168.
[4, 9] 16 Am Jur 2d, Constitutional Law §§ 150, 151, 168, 169.
[7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 123.
[10, 13] 26 Am Jur 2d, Eminent Domain §§ 41, 163.
[11] 16 Am Jur 2d, Constitutional Law § 256.
[12] 51 Am Jur, Taxation §§ 633, 734.
[14, 16, 19, 21, 22, 34] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 609, 638, 651.
[15] 40 Am Jur 2d, Hospitals and Asylums § 1.
[20] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 557.
[23] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 49.
[24] 15 Am Jur 2d, Charities §§ 56, 115, 119–124.
[26] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 63.
[28–33] 1 Am Jur 2d, Actions § 56.
[35] 5 Am Jur 2d, Appeal and Error § 831.
[36] 15 Am Jur 2d, Charities § 5.

3. STATUTES—CONSTITUTIONAL LAW—PRESUMPTIONS.

Legislation is clothed with a presumption of constitutionality and must be sustained if within constitutional limits.

4. STATUTES—LEGISLATIVE INTENT—COURTS.

It is incumbent on the Michigan Supreme Court to give effect to the plain and clear intent of the Legislature irrespective of possible view of any Justice or Justices that such intent is unwise or impolitic.

5. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—CONSTITUTIONAL LAW.

The Hospital Finance Authority Act, as to its objective, is not only constitutionally permissible but is encouraged (MCLA 331.31 *et seq.).*

6. STATUTES—TITLE OF ACT—HOSPITAL FINANCE AUTHORITY ACT.

A reading of the title of the Hospital Finance Authority Act shows that it is explicit and explanatory and that all provisions are germane to the object and the implementation thereof (MCLA 331.31 *et seq.).*

7. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—STATES.

There is no portion of the Hospital Finance Authority· Act which provides for lending of credit in violation of provisions of the constitution which prohibit cities or the state from lending their credit for public or private purposes except as authorized by law or the constitution. (Const 1963, art 7, § 26, art 9, § 18; MCLA 331.31 *et seq.).*

8. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—CONSTITUTIONAL LAW—INTERNAL IMPROVEMENTS.

The Hospital Finance Authority Act, which deals with an element of the public health and welfare, does not concern internal improvements; a section of an article of the constitution which generally prohibits the state from participating in works of internal improvement is interpreted to mean that internal improvements are undertakings of the government to construct artificial highways of commerce or to improve natural highways of commerce, works such as railroads, canals and similar works better left to private enterprise and when the undertaking is in the performance of what is a duty owed by a government to its citizens, for example, like protecting their health and safety or suppressing crime, such actions have never been considered and are not denominated works of internal improvement (Const 1963, art 3, § 6; MCLA 331.31 *et seq.).*

9. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—PUBLIC PURPOSES
—CONSTITUTIONAL LAW—LOCAL ACTS—SPECIAL ACTS.

The purposes sought to be accomplished by the Hospital Finance
Authority Act are public purposes and the Act is a constitu-
tional exercise of legislative power insofar as a section of an
article of the Constitution applies, which provides "[t]he legisla-
ture shall pass no local or special act in any case where a
general act can be made applicable, and whether a general act
can be applicable shall be a judicial question" because the Act
is designed to meet and remedy a statewide problem (Const
1963, art 4, § 29; MCLA 331.31 *et seq.*).

10. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—CONSTITUTIONAL
LAW—APPROPRIATIONS—HOSPITAL AUTHORITY—EXECUTIVE ·
BRANCH.

The Hospital Finance Authority Act does not require any appro-
priation of public money or property within the meaning of a
section of an article of the Michigan Constitution which re-
quires two-thirds vote of the Legislature to appropriate public
money or property for local or private purposes; the hospital
authority provided for in that Act is an executive branch body,
not a legislative body; the money raised by the authority is
loaned to hospitals, not appropriated (Const 1963, art 4, § 30;
MCLA 331:31 *et seq.*).

11. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—DEPARTMENT OF
TREASURY—LEGISLATURE—DISCRETION—CONSTITUTIONAL LAW.

Placement of a hospital authority within the Department of
Treasury is a proper exercise of the discretion which was left to
the Legislature and is appropriately in relation to the functions
of that department and the statutory requirements assigned by
the Hospital Finance Authority Act to the department; the Act
does not organize a new principal department under sections of
an article of the constitution which establish and structure the
principal departments of state government which shall be
grouped as far as practicable according to major purposes
(Const 1963, art 5, §§ 2, 3; MCLA 331.31 *et seq.*).

12. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—TAXATION—TAX
EXEMPTION—NOTES—BONDS—LEGISLATURE—DISCRETION—CON-
STITUTIONAL LAW.

Section of the Hospital Finance Authority Act which exempts
from all taxation any hospital authority's property, income and
operation and a subsequent section which, with exceptions,
gives a state and local tax exemption to holders of notes and
bonds issued by authorities pursuant to the Act is properly

within the exercise of legislative wisdom and is sustained by the Michigan Supreme Court; the Legislature acted affirmatively and exercised its power and discretion by granting an exemption "by law" in those sections of that Act as explicitly authorized in sections of an article of the constitution providing "[t]he power of taxation shall never be surrendered, suspended or contracted away" and "[t]he legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law" (Const 1963, art 9, §§ 2, 3; MCLA 331.80, 331.81).

13. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—BONDS—NOTES—
    STATE DEBTS—CONSTITUTIONAL LAW.

A section of the Hospital Finance Authority Act provides that the "state shall not be liable on any bonds of the state authority and the bonds and notes shall not be a debt of the state and each bond and note shall contain on its face a statement to such effect"; thus, a section of an article of the Michigan Constitution prohibiting the issuing of "evidence of state indebtedness * * * except for debts authorized pursuant to" the Constitution is not applicable to that Act; similarly a section of an article of the Michigan Constitution which restricts the power of a state to borrow money does not pertain to that Act (Const 1963, art 9, §§ 12, 15; MCLA 331.31 *et seq.*).

14. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—MUNICIPAL COR-
    PORATIONS—CORPORATIONS—BONDS.

A city may effect a reorganization of a city hospital by utilizing the provisions of the Hospital Finance Authority Act by transferring the property and assets of the hospital to a local hospital authority organized under the Act, where the authority in turn leases the facilities to a nonprofit, nonpublic corporation organized specifically for this purpose and eventually transfers all right, title and interest in the property to the nonprofit corporation, and the local authority assumes existing liabilities and debts of the city which resulted from the operation of the city hospital and from the general obligation bonds to support that hospital (MCLA 331.31 *et seq.*).

15. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—WORDS AND
    PHRASES.

"Hospital" as used in the Hospital Finance Authority Act refers to the legal entity which operates and manages the "hospital facilities"; W. A. Foote Memorial Hospital, Inc. is a "hospital" for the purposes of that Act (MCLA 331.31 *et seq.*).

16. MUNICIPAL CORPORATIONS—HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—REAL PROPERTY—CONVEYANCE.

A home-rule city's authority to transfer title of a city hospital to a hospital authority rests not only upon a section of the Hospital Finance Authority Act providing that an incorporating unit may transfer any real property, except cemetery property, owned by it to a local authority established pursuant to that act, but also upon provisions of the home-rule city act which states that each city in its charter may provide "[f]or the maintenance, development, operation of its property and upon the discontinuance thereof to lease, sell or dispose of the same subject to any restrictions placed thereupon by law" and where the city charter provides that the city may convey and dispose of any real property for corporate purposes (MCLA 117.4[e][3], 331.57; Jackson City Charter, § [1]).

17. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—HEALTH.

The public purpose of the Hospital Finance Authority Act is to encourage adequate health care for Michigan citizens.

18. STATUTES—CONSTRUCTION.

The law should be interpreted to make sense and carry out the legislative and public purpose within the limits of constitutionality.

19. HOSPITALS—CONVEYANCE—HOSPITAL AUTHORITY—HOSPITAL FINANCE AUTHORITY ACT—PUBLIC INTEREST—CORPORATIONS—LEASE.

Public interest demands that the sale of a city hospital to a hospital authority under the Hospital Finance Authority Act be of a "going concern" because the residents of the area have a continuing need for hospital services so that the discontinuance of city ownership should be simultaneous with the transfer to the authority and the lease for purposes of operation by the authority to a nonprofit, nonpublic corporation organized specifically for this purpose (MCLA 331.31 *et seq.*).

20. MUNICIPAL CORPORATIONS—CHARTER AMENDMENT—HOSPITALS.

Amendment of a city charter which deleted a section relating to the management, operation, control and financing of city hospitals is proper and is effective as of the date of the agreed transfer of a city hospital in that city to a hospital authority; the charter amendment was appropriate and not premature because of the need for "simultaneous action" so that the discontinuance of city ownership would be simultaneous with the transfer to the authority (Jackson City Charter § [78]).

21. MUNICIPAL CORPORATIONS—BONDS—IMPAIRMENT OF CONTRACT—
    CONSTITUTIONAL LAW—HOSPITALS.

A city remained responsible to the bondholders of general obliga-
tion bonds and a hospital authority's assumption of the liabili-
ties of a city hospital did not impair the obligation of the
contract in violation of a section of an article of the constitu-
tion because the city did not seek to transfer its obligations to
the authority but the authority agreed to furnish funds suffi-
cient for the city to meet its bond obligations (Const 1963, art 1,
§ 10; MCLA 137.1a).

22. HOSPITALS—CONVEYANCE—CONSIDERATION—HOSPITAL AUTHORITY
    —PUBLIC BODY—PUBLIC PURPOSE.

Consideration for transfer of a city hospital to the local hospital
authority was adequate because sufficient value was exchanged
and received, it is a transfer from one public body to another,
each for a public purpose, and the subject project was self-
liquidating.

23. DEEDS—REVERTER—TRUSTS—HOSPITALS—MUNICIPAL CORPORA-
    TIONS.

Warranty deed executed in 1916 which conveyed land to a city
with the provision "that no part of said described property
shall at any time be used for any purpose other than that of a
city hospital, and in case of violation of this covenant said
described premises shall revert to the" grantor, "her heirs,
executors, administrators and assigns" in no way obligates the
city to operate a hospital and in no way expresses the intention
to establish a trust; it merely states that if the land is not used
as a site for a city hospital it shall revert as directed; and if all
of the heirs of the grantor have executed quitclaim deeds of
that land to the city title thereto is cleared and the city can
dispose of the property without reference to the possibility of
reverter.

24. ATTORNEY GENERAL—DETERMINATION OF HEIRS—NOTICE—CHARI-
    TABLE TRUST.

The Attorney General is not entitled to notice in subsequent
proceeding to determine heirs of a grantor because no charita-
ble trust is involved where the deed conveyed a fee.

25. HOSPITALS—CORPORATIONS—DECLARATORY JUDGMENT—PARTIES—
    APPEAL AND ERROR—CORPORATE FRANCHISE.

A nonpublic, nonprofit corporation to which a city hospital was to
be leased has standing in a case by it and the city for a
declaratory judgment to determine the legality of the transfer

of the assets of a city hospital to a hospital authority and is a necessary party to the reorganization plan as the lessee who will operate the hospital facilities; the trial court erred in ordering its corporate license to be cancelled because any simultaneous transaction will depend upon the existence of that corporation.

CONCURRING OPINION
WILLIAMS, J.

See headnotes 1–25.

26. HOSPITALS—MUNICIPAL CORPORATIONS—CITY CHARTER—REFERENDUM—HOSPITAL AUTHORITY—NOTICE.

*Referendum resolution for amendment of a city charter advised the people of the city only of a transfer of a hospital from the city hospital authority and did not advise the people of a possible further transfer to a private non-profit entity; if and when such a transfer is contemplated, there could be questions of whether there had been proper notice unless other appropriate notice is given and without such proper notice an attempted transfer would be invalid.*

OPINION DISSENTING IN PART AND CONCURRING IN PART

T. G. KAVANAGH and LEVIN, JJ.

27. STATUTES—CONSTITUTIONAL LAW—SUPREME COURT—HOSPITAL FINANCE AUTHORITY ACT.

*Michigan Supreme Court should not decide the constitutional questions concerning the Hospital Finance Authority Act as it is apparent that none of the litigants desires that any aspect of the Act be held unconstitutional (MCLA 331.31 et seq.).*

28. ACTION—PARTIES—JUSTICIABLE—CONTROVERSY.

*Unless parties have adverse legal interests an action is not justiciable for it fails to present a definite and concrete controversy.*

29. ACTION—STANDING—JUSTICIABLE—PARTIES—CONTROVERSY—ISSUES—COURTS—CONSTITUTIONAL LAW.

*Standing to raise an issue is an integral aspect of justiciability and the gist of the question of standing is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which a court so*

*largely depends for illumination of difficult constitutional questions.*

30. ACTION—ADVERSARIES—SUPREME COURT—BRIEFS—ISSUES—PRECEDENT.

*Without adversaries the Michigan Supreme Court is deprived of the benefit of competitive presentations because competitive briefs frequently sharpen the issues and are of great assistance in deciding the question at hand, and any opinion the Court might express would be entitled to little weight as precedent because in reality it would not be deciding a question but, rather, merely obliging the litigants before it.*

31. ACTION—COURTS—CONTROVERSY.

*Courts ordinarily will not decide a case or question in or on which there is no real controversy.*

32. COURTS—SUPREME COURT—CONSTITUTIONAL LAW—ADVISORY OPINION—MUNICIPAL CORPORATIONS—HOSPITALS.

*Michigan Supreme Court may not constitutionally furnish an advisory opinion to the City of Jackson or its hospital authority.*

33. ACTION—ADVERSARIES—DISMISSAL AND NONSUIT—INTERVENTION—ATTORNEY GENERAL.

*There is no need to dismiss an action, although it began without adversaries, where the intervention of the Attorney General provides the necessary adverseness.*

34. HOSPITALS—HOSPITAL FINANCE AUTHORITY ACT—MUNICIPAL CORPORATIONS.

*There is nothing in the Hospital Finance Authority Act which precludes a city hospital being reorganized as a private hospital in order to obtain benefits under that Act, such a reorganization is entirely consistent with the provisions of that Act; therefore, a city hospital may be so reorganized and avail itself of the benefits under that Act (MCLA 331.31 et seq.).*

35. APPEAL AND ERROR—SUPREME COURT—ISSUES—COURT OF APPEALS—COURT RULES.

*Michigan Supreme Court should not decide issues which are not questions of such public moment as to require early determination; they are not the kind of issues which warrant bypass of the Court of Appeals (GCR 1963, 797).*

36. TRUSTS—CHARITABLE TRUSTS—REAL PROPERTY—DEEDS—REVERTER
    —CONDITION SUBSEQUENT.
    *A charitable trust may be created although the settlor uses words
    of condition and land may be conveyed upon a charitable trust
    subject to reversion to the settlor or his heirs upon breach of a
    condition subsequent so that if the condition is broken, the
    settlor or his heirs are entitled to the property.*

Appeal from Jackson, Kevin J. Daley, J. Submitted June 5, 1973. (No. 9 June Term 1973, Docket No. 54,017.) Decided October 17, 1973.

Complaint by W. A. Foote Memorial Hospital, Inc, and the City of Jackson against City of Jackson Hospital Authority and Lawrence L. Bullen for a declaratory judgment that there is adequate legal consideration for the transfer of the assets of plaintiff hospital to the defendant hospital authority, that the transfer is in the best interest of the public trust, that the transfer is proper and in accordance with the Michigan Constitution, that 1969 PA 38 is constitutional, and that the hospital authority perform the agreements to complete the transfer. The Attorney General intervened. Request by Governor William G. Milliken that certain questions in the case be certified to the Supreme Court as permitted by GCR 1963, 797. Request denied, without prejudice to recertification. Judgment that 1969 PA 38 was constitutional but that the transfer should not take place. Request by Governor William G. Milliken that the controlling question regarding the constitutionality of 1969 PA 38 be recertified. Request for recertification, appeal by City of Jackson and defendants' application for delayed cross-appeal considered by the Supreme Court and order entered that cause be docketed as an appeal and a cross-appeal on leave granted. Affirmed in part, reversed in part, and remanded.

*C. Edwin Carraher,* City Attorney *(Domke, Marcoux, Allen & Beaman* [by *John H. Schomer],* of counsel), for City of Jackson.

*Rosenburg, Painter, Stanton, Bullen & Nelson,* for defendants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Maxine Boord Virtue, Milton I. Firestone,* and *Edwin M. Bladen,* Assistants Attorney General, for intervenor.

Amicus Curiae: *Warner, Hart & Morgan; Miller, Canfield, Paddock & Stone* (by *George T. Stevenson* and *Charles L. Burleigh, Jr.)* and *Dickinson, Wright, McKean & Cudlip* (by *Milton M. Thompson),* for Michigan Hospital Association.

M. S. COLEMAN, J. In 1969, the Legislature enacted 1969 PA 38, amended by 1970 PA 142 (effective August 1). This is the Hospital Finance Authority Act, MCLA 331.31 *et seq.;* MSA 14.1220(1) *et seq.* The title sets forth the legislation as designed

" * * * to create a state hospital finance authority to lend money to nonprofit hospitals for capital improvements; to provide for the incorporation of local hospital authorities with power to construct, acquire, reconstruct, remodel, improve, add to, enlarge, repair, own, lease and sell hospital facilities; to authorize the authorities to borrow money and issue obligations and to enter into loans, contracts, leases, mortgages and security agreements which may include provisions for the appointment of receivers; to exempt obligations and property of the authorities from taxation; and to provide other rights, powers and duties of the authorities."

Section 2 states the legislative purpose:

"[F]or the benefit of the people of the state and the improvement of their health, welfare and living conditions, it is essential that hospitals within the state be provided with appropriate means to expand, enlarge and establish health care, hospitals and other related facilities; and that it is the purpose of this act to provide a method to enable hospitals in the state to provide the facilities and structures which are sorely needed to accomplish the purposes of this act, all to the public benefit and good, to the extent and manner provided herein."

The Act is divided into four chapters. The first (§§ 1–3) contains the title, legislative purpose, and definitions.

The second (§§ 11–16) creates and empowers the state Hospital Finance Authority, "a public body and politic of the state" (§ 11).

Chapter 3 authorizes the incorporation of

"a local hospital authority * * * for the purpose of constructing, acquiring, reconstructing, remodeling, improving, adding to, enlarging, repairing, owning and leasing *hospital facilities* for the use of any *hospital* within or without the boundaries of the incorporating unit." (Emphasis added.) (§ 21.)

Section 26 provides that the local authority "is a public body corporate" which may "generally do and suffer to be done all things necessary for and convenient and incident to the carrying out of the purpose of its incorporation." Section 27 lists some powers of the local authority which include the ability to "enter into lease or lease-purchase agreements with any hospital for the use of the hospital facilities." Sections 28–32 permit the local authority to borrow money or issue negotiable bonds "[f]or the purpose of defraying the project costs of hospital facilities". Section 33 states that when all bonds so issued are retired, the authority "may

convey the title to the hospital facilities to the lessee hospital or organization authorized to operate a hospital in accordance with any agreement executed between the local authority and the lessee hospital."

Chapter 4 lists obligations, liabilities and characteristics of the authorities not otherwise covered in chapters 2 and 3. The Act closes with the following command:

"This act, being necessary for and to secure the public health, safety, convenience and welfare of the citizens of the state, shall be liberally construed to effect the public purposes hereof."

This we shall do within constitutional and legal limitations.

## FACTS

The present controversy arose when the City of Jackson sought to utilize the provisions of Act 38. W. A. Foote Memorial Hospital, (hereinafter designated as Foote Hospital) is owned by the city and operated pursuant to § 78 of the city charter. Part of the hospital facility makes use of land deeded to the city in 1916 by Ida W. Foote. Daily control of the hospital is exercised by a Board of Hospital Managers. The charter allows one mill of the city property tax to be appropriated for the hospital, although most patients are not city residents. These funds are primarily used to assist in meeting obligations incurred by the issuance in 1958 of general obligation bonds to raise capital needed for expansion and improvement of hospital facilities.

With the inevitable increase in the demand for hospital services and the increased difficulty in raising funds, the city began to investigate means

whereby additional money could be raised. Despite the best efforts of the city and the hospital managers, the search uncovered no available source of funds. The city is thus without the financial means to remedy overcrowded conditions and to provide needed emergency room, laboratory and other facilities.

When Act 38 was passed, the hospital managers unanimously decided to utilize its provisions to meet the increasingly urgent need for expanded and improved facilities. Negotiations between the managers and the city produced an agreement whereby the city would transfer the property and assets of Foote Hospital to a local hospital authority organized under Act 38. The authority in turn would lease the facilities to W. A. Foote Hospital, Inc., a nonprofit, nonpublic corporation organized specifically for this purpose and eventually would transfer all right, title and interest in the property and assets to the nonprofit corporation.

Under the agreement, the local authority was to assume existing liabilities and debts of the city which resulted from operation of the hospital and from the general obligation bonds. The local authority was to pay $250,000 when the agreement was signed and, 10 years after, pay $25,000 per year for 30 years. The local authority was to relinquish all claims to the one mill appropriation. Subject to the restrictions of Act 38, the local authority was empowered to assign its rights or convey title to the nonprofit corporation which would be leasing and operating the facilities. The managers and the city agreed that this process was best suited to serving and preserving the public health and welfare.

On September 15, 1970 the city commission elected a five member local hospital authority. On

December 11, 1970 the authority declined to execute and carry out the agreement. This decision resulted from questions raised by interested parties concerning the constitutionality of the act and the proposed transfer.

The city filed a complaint for declaratory judgment in the Jackson County Circuit Court on December 14, 1970 which sought a determination of the act's constitutionality. It also sought an order compelling the local authority to execute and carry out the agreement.[1]

In its answer the authority contended that the statute authorizing its creation was unconstitutional. It further alleged the insufficiency of consideration for the transfer and various violations of the state constitution if the transfer were to occur.

Both plaintiffs (August 6, 1971) and defendants (August 16, 1971) moved for a summary judgment claiming there was no genuine issue as to any material fact. The Attorney General intervened on August 12, 1971 opposing the proposed reorganization and transfer. He moved for summary judg-

---

[1] The complaint sought the following findings and order:

"(a) There is adequate legal consideration for the transfer of the assets of W. A. Foote Memorial Hospital from the City of Jackson to the Jackson Hospital Authority under the Agreement * * * .

"(b) The transfer of W. A. Foote Memorial Hospital from the City of Jackson to the Jackson Hospital Authority is in the best interest of the public trust.

"(c) The transfer of the W. A. Foote Memorial Hospital from the City of Jackson to the Jackson Hospital Authority is proper and in accordance with the Michigan Constitution of 1963, Article VII, Section 26 and Article IX, Section 18.

"(d) Act 38, Chapter 3 thereof, of the Michigan Public Acts of 1969 under which said reorganization is to be accomplished is constitutional under Article VII, Section 26 and Article IX, Section 18 of the Michigan Constitution of 1963.

"(e) The City of Jackson Hospital Authority on the basis of the aforesaid findings, execute and perform the agreements heretofore considered and carry out its functions in accordance with Act 38 of the Michigan Public Acts of 1969."

ment on October 29, 1971. A "Complaint of Intervenor in Quo Warranto" was filed on May 19, 1972. On May 23, 1972, the Attorney General again filed an intervention and appearance, this time on behalf of the "uncertain and indefinite beneficiaries of an inter vivos and testamentary charitable trust of Ida W. Foote and indefinite beneficiaries of the W. A. Foote Hospital, Inc., a charitable trust under Act 101 of the Public Acts of 1961, as amended."

This controversy includes the status of the warranty deed executed by Ida W. Foote on September 5, 1916 which conveyed land to the City of Jackson with the provision:

"[T]hat no part of said described property shall at any time be used for any purpose other than that of a city hospital, and in case of violation of this covenant said described premises shall revert to the said Ida W. Foote, her heirs, executors, administrators and assigns."

The Attorney General claims that the deed constituted a charitable trust.

In the meanwhile, an executive message dated March 22, 1972 requested that pursuant to GCR 1963, 797 this Court consider the constitutionality of Act 38. Such procedure is permitted if the question is "of such public moment as to require early determination". On April 7, 1972 the request was denied "without prejudice to recertification to this Court by the Governor after the trial court had decided the central issue of the constitutionality of the Act."

The opinion of the trial court was filed August 14, 1972.[2]

---

[2] "CONCLUSION:
"In conclusion, this Court finds:
"1. That 1969 PA 38, is constitutional.
"2. That the City of Jackson, operating the W. A. Foote Memorial

On October 18, 1972, the trial court entered an order of summary judgment holding Act 38 constitutional but decreeing "[t]hat the City of Jackson, operating the W. A. Foote Memorial Hospital cannot avail itself of the provisions of this Act since it is a public hospital." The court also found that, because there could be no transfer, W. A. Foote Memorial Hospital, Inc. had no standing in the court and likewise that the deletion of § 78 of the city charter was void. The court further found that the Attorney General was to receive notice of any determination of heirs as to the Ida W. Foote conveyance in that it constituted a charitable trust.

Also on October 18, 1972, summary judgment for the Attorney General was filed incorporating the orders above related, but further ordering that the corporate license of W. A. Foote Memorial Hospital, Inc. be "cancelled by the State of Michigan."

On February 28, 1973 this Court ordered "that the cause be docketed as an appeal and cross-appeal".

---

Hospital, cannot avail itself of the provisions of this act since it is a public hospital.

"3. That the W. A. Foote Memorial Hospital, Inc. has no standing in this case and, at this time, has no reason for its existence as a corporation.

"4. That the election wherein the voters of the City of Jackson voted to amend their City Charter abolishing the board of hospital managers and all their powers, was a premature act on the part of the City Commission in placing the same on the ballot and, until such time as the transfer was effected, there was no logical or legal reason to even abolish the board of managers.

"5. That the Attorney General of the State of Michigan, as the protector of interest in all charitable public trusts, was entitled to notice of the petition to be filed in the Circuit Court for the County of Jackson to determine who the heirs of the deceased were and the determination of the City of Jackson's interest.

"Therefore, let an order be entered granting the matter *[sic]* of the Attorney General for a summary judgment as prayed."

1.

We affirm the conclusion of the lower court that Act 38 is constitutional.

This Court has said that legislation is "clothed with the presumption of constitutionality" and must be sustained if within constitutional limits. It is said to be "incumbent upon our Court to give effect to the plain and clear intent of the Legislature irrespective of possible view of any Justice or Justices that such intent is unwise or impolitic." *Advisory Opinion re Constitutionality of PA 1970, No 100,* 384 Mich 82, 89; 180 NW2d 265 (1970).

The Legislature passed Act 38 "for the benefit of the people of the state and the improvement of their health, welfare and living conditions". Art 4, § 51 of the Const of 1963 mandates:

"The public health and general welfare of the people of the state are hereby declared to be matters of primary public concern. The legislature shall pass suitable laws for the protection and promotion of the public health."

The Convention comment explains that this section instructs "the legislature to adopt whatever public health measures it deems appropriate."

In *Ecorse v Peoples Community Hospital Authority,* 336 Mich 490; 58 NW2d 159 (1953), this Court upheld the constitutionality of an act which authorized formation and operation of community hospitals. It was said to be "fundamental that courts should not substitute their judgment for that of the legislature" (p 500). The Court said at 501:

"Undeniably, health is a matter of State concern. *Davock v Moore,* 105 Mich 120, 132 (28 LRA 783) [63 NW 424 (1895)]. In safeguarding the public health, the

legislature is granted a large area of discretion as to the measures to be used, it being no longer questioned that the State may interfere directly or indirectly by any of its agencies whenever the public interest demands it."

Thus, as to its objective, Act 38 is not only constitutionally permissible but is constitutionally encouraged.

The circuit judge below determined that the legislation did not violate art 4, § 24 which provides:

"No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title."

In *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973), we said the "title should be construed reasonably, not narrowly and with unnecessary technicality." (p 464.) We further said at p 465:

"An act may include all matters germane to its object. It may include all those provisions which directly relate to carry out and implement the principal object. As a review of the cases will show, the purpose of this constitutional limitation is to insure that both the legislators and the public have proper notice of legislative content and to prevent deceit and subterfuge."

A reading of Act 38's title shows that it is explicit and explanatory and that all provisions are germane to the object and the implementation thereof.

In the court below, the constitutionality of the Act was questioned in light of Const 1963, art 7, § 26 and art 9, § 18 which prohibit cities or the

state from lending their credit for public or private purposes except as authorized by law or the constitution. As the court below found, there is no portion of Act 38 which provides for such lending of credit. Section 12(g) mandates that the "state shall not be liable on any bonds of the state authority and the bonds and notes shall not be a debt of the state." Section 28 says "[n]o bond or coupon issued pursuant * * * shall be a general obligation of nor constitute a debt of * * * any of the incorporating units within the meaning of any constitutional, charter or statutory limitation."

The matter has been well argued in the trial court and the opinion of the court in this respect is approved.

The above issues were those raised and passed upon by the circuit court. On appeal, additional constitutional questions were raised.

1. Does Act 38 violate Const 1963, art 3, § 6 which generally prohibits the state from participating in works of internal improvement?

Act 38 does not concern internal improvements. Art 3, § 6 has been interpreted by the Attorney General in his opinion No. 4146 of April 10, 1963. Internal improvements are "undertakings of the government to construct artificial highways of commerce or to improve natural highways of commerce, works such as railroads, canals and similar works better left to private enterprise." When the undertaking is "in the performance of what is a duty owed by a government to its citizens, for example, like protecting their health and safety or suppressing crime," such actions "have never been considered and are not denominated works of internal improvement."

We agree and again emphasize the language of art 4, § 51 and our discussion above. We deal not

with an avenue of commerce but with an element of the public health and welfare.[3]

2. Does Act 38 violate Const 1963, art 4, § 29 which provides: "The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question."?

We must consider "the purposes sought to be accomplished by the law." If we find "those purposes are public purposes, if the work of the entity is a public work" then we should find Act 38 to be "a constitutional exercise of legislative power" insofar as art 4, § 29 applies. *Advisory Opinion re Constitutionality of PA 1966, No 346,* 380 Mich 554, 571; 158 NW2d 416 (1968). We so find.

Further, in the *Ecorse* case, *supra,* this Court said at 502–503:

"We have here a matter of health, which is a question of State-wide concern and in which the legislature has a large area of discretion. The defendant authority is a State agency and, as such, is not a municipal corporation or a body created by the municipalities here involved but by the State itself. See *[Huron-Clinton Metropolitan Authority v Boards of Supervisors of Five Counties,* 300 Mich 1; 1 NW2d 430 (1942)]. The legislation in question, not being local in nature, does not require the vote of local electors for its approval * * * ."

Act 38 is designed to meet and remedy a state-wide problem. It does not speak to the problem dealt with by art 4, § 29.

---

[3] *See Highland Park v Oakland County Drain Commissioner,* 312 Mich 407; 20 NW2d 253 (1945), *Oakland County Drain Com'r v Royal Oak,* 306 Mich 124; 10 NW2d 435 (1943), *Young v Ann Arbor,* 267 Mich 241; 255 NW 579 (1934) and 2 Official Record, Constitutional Convention 1961, pp 2310–2312.

3. Does Act 38 violate Const 1963, art 4, § 30 which requires two-thirds vote of the Legislature to appropriate public money or property for local or private purposes?

We are unpersuaded that Act 38 requires any appropriation of public money or property within the meaning of art 4, § 30—quite the contrary. Section 12(g) of the Act provides that the state authority may borrow money and issue bonds but that these will not be considered debts of the state. Section 14(1) provides that the state authority may issue bonds and notes as necessary "to provide sufficient funds for the making of hospital loans" and to meet debt obligations. Section 14(3) states generally that these obligations are general obligations of the state authority. Its property, revenue and money is to be used to meet them. Art 9, § 13 specifically authorizes public bodies corporate, such as the state authority, to undertake such transactions. Act 38 authorizes no legislative appropriation nor have we been directed to any section which may reasonably be so interpreted.

The hospital authority is an executive branch body, not a legislative body. The money raised by the authority is loaned to hospitals, not appropriated. Art 4, § 51 *supra* emphasizes the importance of public health. Hospitals ministering to those in need of health care are both public and private. To rule that executive organizations to promote public health cannot aid local hospitals financially and otherwise, would strike a mortal blow to the bedrock of public health *i.e.* the local hospitals throughout the state. We find this argument to be without merit.

4. Does Act 38 violate Const 1963, art 5, §§ 2, 3 which establish and structure the principal departments of state government which "shall be

grouped as far as practicable according to major purposes"?

These sections were new with the 1963 Constitution.

In the Convention comment to § 2, the Legislature and Governor were said to retain "considerable discretion as to internal organization within principal departments." Also see 1 Official Record, Constitutional Convention 1961, pp 1767–1768. Section 11 of Act 38 provides that the "state authority shall be within the department of treasury and shall exercise its prescribed statutory powers, duties and functions independently of the head of the department."

The Act does not organize a new principal department and is not without precedent in its language. For instance, the State Housing Development Act, 1966 PA 346, established an independent authority within the Department of Social Services, MCLA 125.1421; MSA 16.114(21).

This placement of the hospital authority is a proper exercise of the discretion which was left to the Legislature and is appropriately in relation to the functions of that department and the statutory requirements assigned by the Act to the department.

5. Does Act 38 violate Const 1963, art 9, §§ 2, 3? These sections read in part:

"§ 2. The power of taxation shall never be surrendered, suspended or contracted away.
"§ 3. The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law."

Section 50 of Act 38 exempts from all taxation any hospital authority's property, income and operation. Section 51, with exceptions, gives a state

and local tax exemption to holders of notes and bonds issued by authorities pursuant to the act. Rather than abandoning its power of taxation, the Legislature has acted affirmatively and has exercised its power and discretion as explicity authorized in art 9, § 3 by granting an exemption "by law" in §§ 50, 51.

Such a grant is properly within the exercise of legislative wisdom and is sustained by this Court.[4]

6. Does Act 38 violate Const 1963, art 9, § 12 prohibiting the issuing of "evidence of state indebtedness * * * except for debts authorized pursuant to" the Constitution?

Section 12(g) of Act 38 provides that the "state shall not be liable on any bonds of the state authority and the bonds and notes shall not be a debt of the state and each bond and note shall contain on its face a statement to such effect." Thus, art 9, § 12 is not applicable to Act 38.

Similarly Const 1963, art 9, § 15 which restricts the power of the state to borrow money does not pertain to Act 38.

We have gone to these lengths in meeting the questions first raised on appeal because we share with the Legislature the concern for providing adequate medical facilities for our people, and it is our intent to facilitate use of the legislation. We believe the legislation to be of great importance to the welfare of this state. We have kept well in mind the admonition of § 54 to construe Act 38 liberally to effect its public purposes. We cannot foresee every future application or interpretation of the provisions of this Act, but to the extent that

---

[4] *See Walter Toebe & Co v Department of Revenue,* 378 Mich 617; 148 NW2d 775 (1967), *Armco Steel Corp v Department of Revenue,* 359 Mich 430; 102 NW2d 552 (1960), and *W S Butterfield Theatres, Inc v Department of Revenue,* 353 Mich 345; 91 NW2d 269 (1958).

the Act's constitutionality has been challenged by this action, we find it to be without infirmity.

2.

The Act having been found constitutional, the next question is whether the city may effect the reorganization outlined hereinbefore by utilizing the provisions of Act 38.

We hold that the city may so act.

The defendants and the intervenor have agreed that by definition of a "hospital" in § 3(e)[5] the benefits of the Act are confined to nonpublic corporations. They argue that this definition absolutely bars the proposed reorganization because Foote Hospital is owned and operated by the City of Jackson and that public body cannot legally transfer its property and assets to the authority as agreed, nor can the authority, a public entity, acquire the same.

However, § 3(e) also defines "hospital" as including "nonprofit corporations or other organizations engaged solely in some phase of hospital activity or in providing a hospital supporting service."

Section 3(f)[6] describes "hospital facilities" as the

---

[5] " 'Hospital' means a nonpublic corporation, association, institution or establishment, located within the state, for the care of the sick or wounded or of those who require medical treatment, operated without profit to any individual corporation or association. It also includes nonprofit corporations or other organizations engaged solely in some phase of hospital activity or in providing a hospital supporting service."

[6] " 'Hospital facilities' means any building or structure suitable and intended for, or incidental or ancillary to, use by a hospital and shall include, but is not limited to, outpatient clinics, laboratories, laundries, nurses, doctors or interns residences, administration buildings, facilities for research directly involved with hospital care, maintenance, storage or utility facilities, parking lots and garages and all necessary, useful or related equipment, furnishings and appurtenances and all lands necessary or convenient as a site for the foregoing."

physical assets of what is ordinarily referred to as
a "hospital".

We find that "hospital" as used in this Act
refers to the legal entity which operates and man-
ages the "hospital facilities". With this interpreta-
tion, we proceed to consider the various arguments
in the light of the act as a whole.

Essentially, the defendants argue that the pro-
posed reorganization of Foote Hospital is faulty
because the city cannot legally transfer the hospi-
tal facilities to the authority. Hence, the authority
cannot lease (and eventually convey) the hospital
facilities to W. A. Foote Memorial Hospital, Inc., a
nonprofit, nonpublic corporation for the purposes
of the act. Foote Hospital, they contend, would
remain a public hospital and would not qualify for
any benefits under the Act.

Plaintiffs argue that the agreed reorganization is
legally sound because Foote Hospital as a going
concern can be transferred by the city to another
public body (such as the authority) for the public
purpose of health care. They argue that the au-
thority may then lease to W. A. Foote Memorial
Hospital, Inc., a nonprofit, nonpublic corporation
within the meaning of Act 38 and thereby realize
for the public the benefits of the Act.

As a first consideration, the Act permits the local
authority to own hospital facilities. Specific provi-
sion for such ownership is stated in § 21 *supra*
which authorized incorporation of a local authority
" * * * for the purpose of * * * owning and leas-
ing hospital facilities for the use of any hospital".

In the instant case the city's objective is to
transfer the property and assets of Foote Hospital
to the local hospital authority, a public entity. It,
in turn, would permit W. A. Foote Memorial Hos-
pital, Inc., a private nonprofit corporation, to lease

and operate the facilities and later (after payment of all indebtedness) to acquire all of the authority's right, title and interest in the property and assets.

W. A. Foote Memorial Hospital, Inc. is a "hospital" for the purposes of Act 38.

The Act specifically empowers the local authority to acquire and lease "hospital facilities" or a "going concern" to a "hospital"[7] and when all bonds issued pursuant to the Act have been retired, "convey the title to the hospital facilities to the lessee". (§ 33.)

The definition of "incorporating unit" (§ 3[c]) means " * * * any city * * * incorporating a local authority pursuant to this act." The City of Jackson is an "incorporating unit".

The Act at § 27(a) proceeds with great clarity to provide:

" * * * The governing body of any *incorporating unit* by majority vote of the members-elect thereof, may transfer any real property, except cemetery property, owned by the incorporating unit to a local authority established pursuant to this act." (Emphasis added.)

---

[7] "Sec. 27. Any local authority may:

"(a) Construct, acquire by gift, purchase, lease or condemnation, reconstruct, remodel, improve, add to, enlarge, repair, own and lease hospital facilities, and acquire a site or sites thereof. * * * The governing body of any incorporating unit by majority vote of the members-elect thereof, may transfer any real property, except cemetery property, owned by the incorporating unit to a local authority established pursuant to this act.

* * *

"(c) Enter into lease or lease-purchase agreements with any hospital for the use of the hospital facilities. * * *

* * *

"(e) Sell and convey the hospital facilities and site, or any part thereof, subject to the approval of the state authority, including without limitation, the sale and conveyance thereof subject to a mortgage, for such price and at such time as the local authority may determine. No sale or conveyance shall be made in any manner as to impair the rights or interests of the holders of any bonds."

Read with the remainder of § 27, the city can sell Foote Hospital to the authority and the hospital authority can acquire the hospital facilities and can lease the going concern to a hospital such as W. A. Foote Memorial Hospital, Inc.

Moreover, the city's authority to transfer title rests not only upon the provision above, but also upon the provisions of the home rule city act, MCLA 117.4e(3); MSA 5.2078(3) which states that each city in its charter may provide:

"For the maintenance, development, operation of its property and upon the discontinuance thereof to lease, sell or dispose of the same subject to any restrictions placed thereupon by law * * * ."

Section (1) of the Jackson charter provides:

"The inhabitants of the City of Jackson * * * shall * * * be known as 'The City of Jackson,' and by that name may * * * convey and dispose of any real and personal property, for corporate purposes * * * ."

However, the trial judge concluded that "a municipal corporation may not sell property used in the discharge of its governmental functions or received by it for public use such as property used for public health purposes." He cited as authority *Curry v Highland Park,* 242 Mich 614; 219 NW 745 (1928). *Curry* held that the city property could not be sold in the absence of authority to do so in its charter—not the case here.

The judge correctly pointed out that there had been no showing of a decrease in the need for hospital facilities, but that actually the need had increased. However, the conclusion that the city cannot divest itself of these properties and services so long as there is a public need is contrary to

public interest and a sound interpretation of the law.

Essentially, the public purpose of Act 38 is to encourage adequate health care for Michigan citizens. Both public and private entities are engaged in providing these services amid expanding and shifting populations, growing demands for a spectrum of services and a growing resentment over increased taxes and charges.

Foote Hospital has been caught between its use by the entire county and its primary source of funding by the City of Jackson alone. It is now too small, too old and too much in need of added services to carry out its responsibilities without further financial help. Many avenues have been explored, but each has led to a dead end.

If the city abandoned the hospital, the public interest would be ill served.

Common sense and practicality must join with consideration of the public health, safety and welfare and the intent of the legislation to promote such as we interpret Act 38 in application to the proposed transfer.

We believe that the law should be interpreted to make sense and to carry out the legislative and public purpose within the limits of constitutionality.

It makes no sense nor carries out any public purpose to insist that a hospital must deny needed services to a community and perhaps even be closed or abandoned before the facilities can be sold unless there is no further need for the hospital—an unlikely eventuality.

In the case of *Kalamazoo Municipal Utilities Association v Kalamazoo,* 345 Mich 318; 76 NW2d 1 (1956), this Court considered the sale of a city light plant to a private corporation and concluded:

"The discontinuance of the use of the property and transfer to the vendee under the terms of the sale may be simultaneous, and in the ordinary course of events are necessarily required to be simultaneous."

In this case as in the *Kalamazoo* case, the public interest demands that the sale be of a "going concern". The residents of the area have a continuing need for hospital services so that the discontinuance of city ownership should be simultaneous with the transfer to the authority and the lease for purposes of operation by the authority to W. A. Foote Memorial Hospital, Inc.

We also find that, in the context of the entire proposed transaction, the amendment to the city charter which deleted § 78 is proper and is effective as of the date of the agreed transfer.

The following question was placed on the ballot after an appropriate resolution by the city commission:

"Shall Serial Sections (78-a) through (78-i) of the City Charter, being all the provisions of the Charter relating to management, operation, control and financing of City hospitals and of W. A. Foote Memorial Hospital in particular, be repealed, effective upon the date of transfer of W. A. Foote Memorial Hospital to a local hospital authority, pursuant to the provisions of Act 38 of the Michigan Public Acts of 1969?"

The question was voted upon on August 4, 1970. It was approved by a casting of 4,562 yes votes and 1,755 no.

The facts show no fraud or deceit. The proposed reorganization was widely reported. The ballot correctly stated the proposed transfer of title. Because of the need for "simultaneous action", the charter amendment was appropriate and not premature.

Another objection to the proposed reorganization is that it allegedly seeks to transfer the city's outstanding obligations regarding the 1958 issue of general obligation bonds. The concern is that the local authority's assumption of the liabilities of Foote Hospital might relieve the city of all responsibility to the bondholders. If so, this is said to impair the obligation of the contract, thus violating Const 1963, art 1, § 10. This concern is not well founded.

By the terms of the proposed reorganization, the city has not sought to transfer its obligations to the local authority. Rather, the local authority has agreed to furnish funds sufficient for the city to meet its bond obligations.

Part of the agreement between the authority and the city is:

"Security shall be furnished to the City under an escrow agreement for payment of the General Obligation Bonds issued by the City and pertaining to the hospital."

The city remains responsible to the bondholders.[8] Under this agreement, it is in a more secure position from which to meet its obligations.

The sufficiency of the proposed consideration for the transfer of Foote Hospital to the local hospital authority has been questioned. It is true that the tentative agreement initially recites a nominal consideration of one dollar. Further examination discloses a recitation which includes the following consideration: assumption of outstanding liabilities of the hospital including over one million dollars outstanding on the 1958 issue of general obligation bonds, the latter to be secured by United States

---

[8] MCLA 137.1a; MSA 5.3188(45a).

Treasury Bills; an initial $250,000 cash payment; yearly payments totaling $750,000; relinquishment of the one mill annual appropriation which in the fiscal year 1970 was $178,000. We do not include the consideration of benefits to be derived to the citizens of Jackson from improved health facilities and services.

We find adequate consideration especially in light of the ruling of this Court in *Sinas v City of Lansing,* 382 Mich 407; 170 NW2d 23 (1969) in which a challenge of a Lansing taxpayer was dismissed. In that suit the City of Lansing proposed to transfer certain urban renewal property purchased for $420,500 to Lansing Community College for $114,345. The Court held that even if there were a transfer without consideration, this transfer was for a public purpose and there was no prohibited lending of credit. In that case, as in this, there was a transfer from one public body to another and each for a public purpose.

Further, the subject project is self-liquidating and well within the requirements of *City of Gaylord v Gaylord City Clerk,* 378 Mich 273; 144 NW2d 460 (1966). The argument of inadequate consideration is without merit.

As further objection to the validity of the transfer by Foote Hospital to the authority, the intervenor argues that the warranty deed of Ida W. Foote, conveying to the City of Jackson the site upon which Foote Hospital subsequently was built, constitutes a charitable trust with the city as the trustee. The condition and reverter provision *supra* are said to manifest an intention to create such a trust.

First, it is of importance to note that the Attorney General intervened on behalf of " * * * beneficiaries of an inter vivos and testamentary chari-

table trust * * * ." To compound the problem, the trial judge in his opinion states,

"W. A. Foote Memorial Hospital was acquired by a testamentary gift from a private donor in 1935."

Mrs. Foote's will contains no provision of any kind for the hospital (nor is there evidence of or mention of any other donor). It seems clear, therefore, that the judge based his conclusion numbered 5 upon erroneous "facts".

The instrument in question in no way obligates the city to operate a hospital and in no way expresses the intention to establish a trust. It merely states that if the land is not used as a site for a city hospital, it shall revert as directed.

Relevant to this case is *Epworth Assembly v Ludington & N R Co,* 236 Mich 565; 211 NW 99 (1926), which concerned the conveyance of land to a railroad company with a reverter provision:

"[T]hat if the land conveyed shall at any time 'cease to be used for railroad purposes' for one year it shall revert to the grantor."

When the plaintiff sought to enforce specific performance on the basis that the instrument was a contract, the Court stated at 570:

"These provisions in no way bind the defendant to maintain and operate a train * * * . In fact, such an undertaking is negatived by the provision for reverter * * * ."

In *Juif v State Highway Commissioner,* 287 Mich 35; 282 NW 892 (1938), plaintiffs brought suit in ejectment for land which had been conveyed to the state by a trustee. The deed to the trustee from the original owners provided that the land

was to "be used for railway purposes, only, and ceasing to be used for such purposes shall revert" to the original owners, their heirs or assigns. (p 37.) This created a possibility of reverter. The Ida W. Foote conveyance is similar in language and intent.

Intervenor's arguments are primarily based upon the assumption that the city is obliged to operate a hospital as a result of the conveyance. This is not true. The instrument speaks to the use of the land and provides for a possibility of reverter upon failure to so use the property.

The City of Jackson claims to have acquired quitclaim deeds from the heirs of Ida W. Foote which surrender their claims under the possibility of reverter. In *Juif*, the Court, at p 38, stated:

"[T]he proposition that an attempted conveyance of land before breach of condition subsequent by the possessor of a possibility of reverter conveys nothing, and operates to extinguish the possibility of reverter, and recognize that such is the rule in this jurisdiction as reiterated in *Dolby v. State Highway Commissioner,* 283 Mich 609 (117 A.L.R. 538) [278 NW 694 (1938)], and established by cases cited therein."

This proposition has been consistently upheld by this Court.[9]

If, in fact, all of the heirs have attempted to quitclaim to the City of Jackson, the common law operates to extinguish the possibility of reverter. (The heirs did not attempt to retain such interest.)

It is the opinion of this Court that if, in fact, all

[9] *See Schoolcraft Community School Dist No 50 v Burson,* 357 Mich 682; 99 NW2d 353 (1959), *Avery v Consumers Power Co,* 265 Mich 696; 253 NW 189 (1934), *Fractional School Dist No 9, Waterford and Pontiac Twps v Beardslee,* 248 Mich 112; 226 NW 867 (1929), *Oakland County v Mack,* 243 Mich 279; 220 NW 801 (1928) and *Halpin v Rural Agricultural School Dist No 9, Gaines Twp,* 224 Mich 308; 194 NW 1005 (1923).

of the heirs of Ida W. Foote executed quitclaim deeds to the subject land to the City of Jackson, title to the property is cleared and the City of Jackson can dispose of the property without reference to the possibility of reverter.

However, there is nothing in the pleadings or proofs to indicate that the heirs of Ida W. Foote have been legally determined. This Court would not foreclose the interest of any possible heir unknown to the Court and, therefore, we remand for such determination of heirs.

### Conclusion

Because it has been agreed that all pertinent facts and exhibits are before the Court and that there is no controversy as to the facts, and because all arguments of reasonable merit have been considered and because three years have elapsed since the beginning of the proposed reorganization, it is the intent of this Court to make a final disposition of the matters presented. We find that:

1. Act 38 is constitutional.

2. The City of Jackson may transfer Foote Hospital to the local hospital authority and the reorganization agreement may be further carried out by the authority and W. A. Foote Memorial Hospital, Inc., such agreement being within the limits of the constitution and the law.

(a) The sale by the city to the authority is subject to the determination of heirs of Ida W. Foote. The Attorney General is not entitled to notice in such a proceeding because no charitable trust is involved, Mrs. Foote's deed having conveyed a fee.

3. In light of the foregoing conclusions of this Court, it must be held that W. A. Foote Memorial

Hospital, Inc. has standing in this case. It also is a conclusion of this Court that the corporation is a necessary party to the reorganization plan as the lessee who will operate the hospital facilities and the trial court therefore erred in ordering the corporate license to be "cancelled by the State of Michigan." Any simultaneous transaction will depend upon the existence of that nonpublic, nonprofit corporation.

Therefore, when the trial court has proof that all of the heirs of Ida W. Foote have quitclaimed to the City of Jackson, all of the alleged legal impediments to the reorganization of W. A. Foote Memorial Hospital as represented in the plan provided to this Court will have been removed.

Affirmed as to the constitutionality of 1969 PA 38.

Reversed as to all other orders and conclusions.

Remanded for determination of heirs of Ida W. Foote in the appropriate court and filing of proof thereof in the trial court[10] and for such other action as is consistent with this opinion.

T. M. KAVANAGH, C. J., and T. E. BRENNAN and SWAINSON, JJ., concurred with M. S. COLEMAN, J.

WILLIAMS, J. *(concurring).* I concur with my sister COLEMAN but I have one reservation.

The Attorney General correctly pointed out that the referendum resolution of May 26, 1970 advised the people of Jackson only of a transfer of W. A. Foote Memorial Hospital from the City of Jackson Hospital Authority, and did not advise the people of a possible further transfer to a private nonprofit entity, the W. A. Foote Memorial Hospital, Inc.

---

[10] See MCLA 702.79; MSA 27.3178(149).

If and when such a transfer is contemplated, there could be questions of whether there had been proper notice unless other appropriate notice is given, *Alan v Wayne County*, 388 Mich 210, 354; 200 NW2d 628 (1972). Without such proper notice an attempted transfer would be invalid.

I concur, however, because actual approval of the transfer to W. A. Foote Memorial Hospital, Inc. neither appears to be a part of the major opinion nor in any event a necessary part of the decision.

Levin, J. *(dissenting in part and concurring in part)*. We granted bypass to consider issues concerning the constitutionality and construction of the Hospital Finance Authority Act, 1969 PA 38.

The constitutional questions cannot be decided as it is apparent that none of the litigants desires that any aspect of the Act be held unconstitutional.

The plaintiffs, W. A. Foote Memorial Hospital, Inc. and City of Jackson, the intervenor, the Attorney General, and the amicus are all in agreement that all the constitutional issues raised by the defendant City of Jackson Hospital Authority are insubstantial.

The Jackson Hospital Authority, while raising these issues, owes its very existence and entirety to the legislation which it purports to challenge. If we were to sustain the constitutional challenges, the purposes of the Act could not be realized and the hospital authority could not function.

The parties desire an adjudication of constitutional issues by this Court. Yet they are not truly adversaries. The interests of the Jackson Hospital Authority, as well as those of the W. A. Foote Memorial Hospital, Inc. and the City of Jackson

can only be served by upholding the constitutionality of this legislation.

The Jackson Hospital Authority was incorporated pursuant to the challenged act by the City of Jackson. Its five member governing board of commissioners was appointed by the City of Jackson. The commissioners may be removed from office "for cause" by the Jackson City Commission. Vacancies in the office of commissioner of the hospital authority are filled by the Jackson City Commission.

The present case parallels *South Spring Hill Gold Mining Co v Amador Medean Gold Mining Co,* 145 US 300, 301; 12 S Ct 921; 36 L Ed 712 (1892). Subsequent to the lower court decision, control of both the plaintiff corporation and the defendant corporation had coalesced in the hands of the same persons. In this non-adversary context, the United States Supreme Court declined to adjudicate the appeal on its merits:

"We cannot, however, consent to determine a controversy in which the plaintiff in error has become the *dominus litus* on both sides. We assume that this is not an agreed case gotten up by collusion; but the litigation has ceased to be between adverse parties, and the case therefore falls within the rule applied where the controversy is not a real one."

Unless parties have "adverse legal interests" the action is not justiciable for it fails to present a "definite and concrete" controversy. See *Aetna Life Insurance Co v Haworth,* 300 US 227, 240–241; 57 S Ct 461; 81 L Ed 617; 108 ALR 1000 (1937).

Standing to raise an issue is another integral aspect of justiciability. The predominantly non-adversary nature of this action, in which the defend-

ant Jackson Hospital Authority raises a constitutional defense challenging the Act which gives it life, strongly suggests that it is without standing to complain. "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker v Carr,* 369 US 186, 204 [82 S Ct 691; 7 L Ed 2d 663] (1962)." *Flast v Cohen,* 392 US 83, 99; 88 S Ct 1942; 20 L Ed 2d 947 (1968).

While the Jackson Hospital Authority has filed a brief opposing the Act's constitutionality, it is not the brief of a true adversary whose personal stake in the outcome of the controversy is clearly distinguishable from that of the other litigants. "Competitive briefs frequently sharpen the issues and are of great assistance in deciding the question at hand. Without adversaries we are deprived of the benefit of competitive presentations, and any opinion we might express would be entitled to little weight as precedent because in reality we would not be deciding a question but, rather, merely obliging the litigants before us. See 20 Am Jur 2d, Courts, § 193, p 529." *Rozankovich v Kalamazoo Spring Corp (on reh),* 44 Mich App 426, 428; 205 NW2d 311 (1973).

In *Poe v Ullman,* 367 US 497, 503; 81 S Ct 1752; 6 L Ed 2d 989, 995–996 (1961), the United States Supreme Court, relying on the analysis of Mr. Justice Brandeis in his famous concurring opinion in *Ashwander v Tennessee Valley Authority,* 297 US 288, 341 346; 56 S Ct 466; 80 L Ed 688 (1936), withheld adjudication of the raised constitutional issue because the requisite adverseness was not present:

"In part the rules summarized in the *Ashwander* opinion have derived from the historically defined, limited nature and function of courts and from the recognition that, within the framework of our adversary system, the adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity."

As expressed in *Johnson v Muskegon Heights,* 330 Mich 631, 633; 48 NW2d 194 (1951), "[c]ourts ordinarily will not decide a case or question in or on which there is no real controversy."

Many of the constitutional issues raised by the Jackson Hospital Authority were dealt with in a similar challenge to the constitutionality of the State Housing Development Authority Act, 1966 PA 346 (MCLA 125.1401 *et seq.;* MSA 16.114[1] *et seq.).* See *Advisory Opinion re Constitutionality of PA 1966, No 346,* 380 Mich 554; 158 NW2d 416 (1968). The posture of this case would be different if the Governor or either house of the Legislature had sought an advisory opinion "after [the Hospital Finance Authority Act had] been enacted into law but before its effective date." Const 1963, art 3, § 8.

Recently, in responding to a request by the Governor and Senate for an advisory opinion concerning the constitutionality of the no-fault motor vehicle liability act (1972 PA 294; MCLA 500.3101 *et seq.;* MSA 24.13101 *et seq.),* we said, in refusing to consider questions other than those raised by the Governor and the Senate, that we are not "constitutionally authorized to furnish advisory opinions to the Michigan Trial Lawyers Association or a committee of the State Bar." *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 485; 208 NW2d 469, 484 (1973). Simi-

larly, we may not constitutionally furnish an advisory opinion to the City of Jackson or its hospital authority.

The intervention of the Attorney General provides the necessary adverseness on the other issues. Accordingly, although the litigation began without adversaries, there is no need to dismiss the action.

The Attorney General has vigorously advocated the view that a hospital operated by a city may not be reorganized as a private hospital in order to obtain benefits under the Act. On this issue we agree with Justice M. S. Coleman that there is nothing in the Act which precludes such a reorganization, that such a reorganization is entirely consistent with the provisions of the Act, and, therefore, Foote Hospital may be so reorganized and avail itself of benefits under the Act.

We would not decide the other issues because they are not questions "of such public moment as to require early determination." GCR 1963, 797. They are not the kind of issues which warrant bypass of the Court of Appeals. Moreover, in the plethora of issues presented, inadequate attention has been given to the Attorney General's contention that "the hospital property is affected with a public trust terminable only by the circuit court pursuant to the provisions of the charitable trust act." MCLA 554.351; MSA 26.1191.

The deed of conveyance from Ida W. Foote to the City of Jackson contains language of covenant as well as language providing for a possibility of reverter upon breach of a condition subsequent. The deed provided:

"The said grantee [City of Jackson] for itself and its successors hereby covenants with the said Ida W. Foote, her heirs, executors, administrators and assigns, that

no part of said described property shall at any time be used for any purpose other than that of a city hospital, and in case of violation of this covenant, said described premises shall revert to said Ida W. Foote, her heirs, executors, administrators and assigns."

"A charitable trust may be created although the settlor uses words of condition." 2 Restatement Trusts, 2d, § 351, comment e; 4 Scott on Trusts (3d ed), § 351, pp 2796–2797.

While land may be conveyed upon a charitable trust subject to reversion to the settlor or his heirs upon breach of a condition subsequent so that "if the condition is broken, the settlor or his heirs are entitled to the property" (4 Scott on Trusts [3d ed], § 401.2, p 3141), no such breach has yet occurred in this case. The Foote Hospital is still being operated by the City of Jackson on the land conveyed by Ida W. Foote.

The issues whether a charitable trust was created and what would happen to the trust res upon a termination of the trust are separate issues.

T. G. KAVANAGH, J., concurred with LEVIN, J.