CAVANAGH, J.
(concurring in part and dissenting in part). I concur in result only with part III(C) of the majority opinion because I do not believe 2011 PA 38 offends either the state or federal guarantees of equal protection under the law. Additionally, I concur in result only with part III(D) of the majority opinion because I agree that 2011 PA 38 violates the prohibition against a graduated income tax under Const 1963, art 9, § 7. However, I respectfully dissent from part 111(A) of the majority opinion because, in my view, 2011 PA 38 violates Const 1963, art 9, § 24 as to those pension benefits that will have accrued before January 1, 2012, when 2011 PA 38 goes into effect. I would hold that the right to the statutory tax exemptions provided by the former MCL 206.30(l)(f) and similar statutes is an accrued financial benefit that attaches to the pension benefits at the time they accrue and that the right to the deferred exemption is therefore a contractual obligation that may not be diminished or impaired. See Const 1963, art 9, § 24. As applied to any pension benefits that accrue after January 1, 2012, however, I do not believe that 2011 PA 38 would violate Const 1963, art 9, § 24.
*353 I. ACCRUED FINANCIAL BENEFITS
The first sentence of Const 1963, art 9, § 24 provides that “[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.” Therefore, the critical question is whether the tax exemption contained in the preamendment version of MCL 206.30(l)(f) constitutes an accrued financial benefit of a public pension plan or retirement system. If the answer is affirmative, then the tax exemption is a contractual obligation that may not be diminished or impaired.
I believe that the ratifiers of the 1963 Constitution intended the term “accrued financial benefit[]” to encompass statutory tax exemptions for public pensions. Rather than choosing a precisely limited term — such as “monetary payment” or “cash distribution” — the framers chose to include in article 9, § 24 the broader, generalized term “financial benefits.” In Musselman v Governor, 448 Mich 503, 514; 533 NW2d 237 (1995), this Court explained that a general rule is broader than “a set of specific commands” and that a general rule “governs possibilities that could not have been anticipated at the time.” Given that a general rule is intended to encompass possibilities that may not yet exist, the term “accrued financial benefits” is certainly broad enough to encompass statutory tax exemptions, some of which already existed when the 1963 Constitution was ratified.[1]
*354 Indeed, Michigan has a long history of exempting public pensions from taxation. Annuity payments to employees in city library employees’ retirement systems have been exempt from all state, county, township, city, village, and school district taxes since the 1920s, and state employee pensions have been similarly exempt since 1943 under the State Employees’ Retirement Act (SERA). See MCL 38.705; MCL 38.40. Because these public-pension exemptions were firmly in place long before the 1963 Constitution was ratified, the financial benefits they provided to covered employees would certainly have been known to the framers and the ratifiers. In 1969, the Legislature enacted 1969 PA 332, which amended § 30 of the Income Tax Act, MCL 206.30, and extended the state’s longstanding tax exemptions to the benefits received from all public pension and retirement systems. See MCL 206.30(1)(f), as amended by 2009 PA 134. [2] Extending the tax exemption to all public employees provided an incentive that would attract much-needed professionals to critical jobs in public employment and partially compensated retirees for the comparatively lower compensation received during their years of service to the state. With this history *355 in mind, I believe that the statutory tax exemptions for public pensions are well within the types of benefits to which the ratifiers intended to extend contractual protections.
Concluding that the right to the tax exemption at distribution is both a “financial benefit” and an “accrued benefit” is consistent with this historical background. Specifically, there is no dispute that the various tax exemptions for public pensions provide a financial benefit because they result in a greater net monetary payment to retirees. There is likewise no dispute that taxing pension benefits diminishes those payments because removing the exemption will result in a reduced net monetary payment to retirees.
Turning to the phrase “accrued benefit,” the majority relies in large part on the definition in Studier v Mich Pub Sch Employees’ Retirement Bd, 472 Mich 642; 698 NW2d 350 (2005), to hold that “[a] pension-tax exemption is not an ‘accrued’ benefit because it does not ‘grow over time.’ ” Ante at 314-315, quoting Studier, 472 Mich at 654. In holding that health-care benefits were not accrued financial benefits, the Studier majority concluded that the “ratifiers of our Constitution would have commonly understood ‘accrued’ benefits to be benefits of the type that increase or grow over time — such as a pension payment or retirement allowance that increases in amount along with the number of years of service a public school employee has completed.” Studier, 472 Mich at 654.
Although I do not take issue with the majority’s recitation of the various dictionary definitions of “accrue,” I do not see how these definitions mandate that the benefit must “increase or grow over time.” Id. Indeed, not all the definitions the majority provides encompass the idea of accumulation over time. For *356 example, the quoted definitions of “accrue” include “to come into existence as an enforceable claim,” “to vest as a right,” and “to become a present and enforceable right or demand.” Ante at 313-314 (citations and quotation marks omitted). None of these definitions requires accumulation over time. Instead, these definitions acknowledge that a right can accrue immediately.[3]
As I stated in my Studier dissent, “[t]he term ‘accrued financial benefits’ was meant to include benefits that an employee had worked in reliance on and continued to work in reliance on.” Studier, 472 Mich at 676 (CAVANAGH, J., dissenting). Like the health-care benefits at issue in Studier, I believe that our public employees have “worked in reliance on and continued to work in reliance on” Michigan’s contractual promise that their pension benefits — once accrued — would not be taxed by the state at the time of distribution. Given Michigan’s longstanding exemptions for state employees and city librarians, I believe that this interpretation is well within the common understanding of the people at the time of ratification. See Goldstone v Bloomfield Twp Pub Library, 479 Mich 554, 570-571; 737 NW2d 476 (2007) (Cavanagh, J., dissenting).
Regardless, I believe that the tax exemption for public pensions fits even the Studier majority’s narrow interpretation of “accrued benefit,” because the finan *357 cial benefit provided by what is essentially a deferred tax exemption does “increase or grow over time.” Specifically, the increase in the value of the tax exemption correlates precisely to the increase in the value of the employee’s retirement account. As the value of an employee’s retirement account grows over time, so too does the amount of money that will be exempt from taxation upon distribution, resulting in a financial benefit that increases with one’s length of service to the public employer. Thus, I believe that the tax exemptions at issue here fit even the Studier majority’s narrow definition.
In my view, the financial benefits of a pension plan — including any right to a tax exemption at distribution — accrue as an employee performs work for the public employer. See comments of Delegate Richard Van Dusen, 1 Official Record, Constitutional Convention 1961, p 771) (“And with respect to work performed, it is the opinion of the committee that the public employee should have a contractual right to benefits of the pension plan, which should not be diminished by the employing unit after the service has been performed.”); Advisory Opinion re Constitutionality of 1972 PA 258, 389 Mich 659, 663; 209 NW2d 200 (1973) (holding that “the Legislature cannot diminish or impair accrued financial benefits, but we think it may properly attach new conditions for earning financial benefits which have not yet accrued”). And because prior to January 1, 2012, the financial benefits of public pension plans accrued under a statutory framework that exempted those benefits from taxation at distribution, I believe that the right to the tax exemption attaches to the benefits themselves — as they are earned — and accrues simultaneously.
*358 Thus, while I agree that one generally cannot have any vested right in the continuation of any tax law, Detroit v Walker, 445 Mich 682, 703; 520 NW2d 135 (1994), this is not true if the Constitution provides otherwise, see Shivel v Kent Co Treasurer, 295 Mich 10, 15; 294 NW 78 (1940). I believe that article 9, § 24 provides otherwise. As I have explained, the Legislature is free to amend the tax exemptions, and indeed has seen fit to do so with 2011 PA 38 and similar acts. Accordingly, because article 9, § 24 protects the pension benefits that have already accrued from diminishment or impairment, and because I believe that the right to the tax exemption at distribution is essentially a deferred tax exemption that accrues simultaneously with the benefits themselves, I do not believe it is constitutional for the state to tax any pension benefits that will have accrued before January 1, 2012.
In contrast to the majority, I do not perceive any conflict with Const 1963, art 9, § 2, which provides that “[t]he power of taxation shall never be surrendered, suspended or contracted away.” (Emphasis added.) The key phrase in article 9, § 2 is “power of taxation,” which is a far different concept from actual taxation. In W A Foote Mem Hosp, Inc v City of Jackson Hosp Auth, 390 Mich 193; 211 NW2d 649 (1973), this Court concluded that article 9, § 2 was not violated when the Legislature chose to grant a tax exemption. Id. at 214-215. This Court held that rather than surrendering its power of taxation by granting the exemption, the Legislature was affirmatively exercising its taxation power and discretion. Id. at 215. Likewise, in enacting MCL 206.30(1)(f), the Legislature again exercised its discretion by creating a tax exemption, but did not forever surrender its power to tax. The import of article 9, § 2, of course, is that the Legislature can repeal or amend the tax exemption created by MCL 206.30(1)(f), as it *359 has chosen to do in 2011 PA 38. And while the Legislature may properly tax any pension benefits that accrue after January 1, 2012, when 2011 PA 38 goes into effect, in my view, article 9, § 24 protects from taxation any pension benefits that will have already accrued.
I also find it unavailing for the majority to argue that the second sentence of article 9, § 24 supports the majority’s conclusion that § 24 was never meant to include a tax exemption because a tax exemption cannot be funded yearly. As the convention comments indicate, the second sentence of § 24 was intended to ensure the annual funding of pension liabilities. See 2 Constitutional Convention 1961, Official Record, p 2659. A tax exemption is not a liability. A tax exemption does not represent money the state must pay out; it only limits what the state may take in. Offering a tax exemption as a financial benefit for its employees allows the state to attract and retain talented and dedicated employees without incurring any yearly funding obligation for the benefit given. Therefore, the second sentence of § 24 is irrelevant to whether a tax exemption is encompassed within the meaning of “accrued financial benefits.”[4]
In addition, it is well established that “an advisory opinion does not constitute a decision of the Court and is not precedentially binding in the same sense as a *360 decision of the Court after a hearing on the merits.” Advisory Opinion re Constitutionality of 1972 PA 294, 389 Mich 441, 461 n 1; 208 NW2d 469 (1973). With this premise in mind, I believe the majority opinion sweeps far too wide in attempting to foreclose the myriad possible challenges premised on individual factual circumstances. For example, how does the removal of the tax exemption affect collective-bargaining agreements, in which the rate of future pension benefits was calculated, at least in part, in reliance on Michigan’s longstanding exemption for pension benefits? As Justice LEVIN cautioned in a previous advisory opinion, “[w]hen a court holds an act to be constitutional it does no more than deny a particular claim of unconstitutionality. It ought not, by premature expressions on generalized abstract claims, to appear to foreclose persons differently situated from advancing more concrete claims of unconstitutionality.” Id. at 484 (LEVIN, J., concurring). Footnote 9 of the majority opinion does just that: it attempts to foreclose differently situated persons from advancing concrete claims, and it does so with “premature expressions on generalized abstract claims.”
Likewise, I believe the majority opinion reaches too far by attempting to foreclose future challenges to the Legislature’s revocations of the individual exemptions contained in SERA, MCL 38.40(1); the Public School Employees Retirement Act, MCL 38.1346(1); the Michigan Legislative Retirement System Act, MCL 38.1057(1); the city library employees’ retirement system act, MCL 38.705; and the Judges Retirement Act, MCL 38.2670(1).[5] In my view, the existence of these *361 specific tax exemptions for public employees within the individual retirement acts themselves creates a strong argument that, under article 9, § 24, the exemptions are part of “each pension plan [or] retirement system,” independent of the Income Tax Act.[6]
I think it important to emphasize that until the current fiscal crisis, the state of Michigan was perfectly *362 content to receive the reciprocal benefits of the promise made to its prospective and current employees that, should they continue in service to the state long enough to be eligible for retirement, they would be rewarded with a tax exemption for the retirement benefits they had earned. Only now do our state employees and retirees learn that their reliance on Michigan’s promise was unfounded, and today’s majority decision affixes a judicial stamp of approval to the revocation of that promise. Between MCL 206.30(1)(f) and article 9, § 24, the state of Michigan entered into a contract with its employees, promising that in return for their years of service, their pensions would not be taxed. Promises must be kept.
I, therefore, respectfully dissent from the majority’s decision because I believe that Const 1963, art 9, § 24, requires the state to keep its promise. I would hold that 2011 PA 38 is unconstitutional as applied to any pension benefits that will have accrued before January 1, 2012.
II. CONCLUSION
I respectfully dissent from the majority’s conclusion that 2011 PA 38 does not violate Const 1963, art 9, § 24. In my view, removing the tax exemptions formerly provided by MCL 206.30(1) (f) and similar statutes violates article 9, § 24, but only as applied to any public-pension benefits that will have accrued before January 1, 2012, when the new law goes into effect. As to pension benefits that accrue after January 1, 2012, taxation of those benefits must be limited as stated in part III(D) of the majority opinion, because I agree with the majority that 2011 PA 38 violates the prohibition against a graduated income tax under Const 1963, art 9, § 7.
*363 Marilyn Kelly, J., concurred with Cavanagh, J.

 Because the framers chose a broad, generalized term, I find irrelevant the majority opinion’s assertion that there is some import to the constitutional silence regarding whether pension benefits can be taxed. Simply put, the term “financial benefit” is intentionally *354 broad enough to encompass far more than the monetary payments due to retirees at the time of distribution.

 Before the enactment of 2011 PA 38, MCL 206.30(1)(f) provided that the following were to be deducted from the adjusted gross income when computing state income taxes:
(i) Retirement or pension benefits received from a federal public retirement system or from a public retirement system of or created by this state or a political subdivision of this state.
(ii) Retirement or pension benefits received from a public retirement system of or created by another state or any of its political subdivisions if the income tax laws of the other state permit a similar deduction or exemption or a reciprocal deduction or exemption of a retirement or pension benefit received from a public retirement system of or created by this state or any of the political subdivisions of this state.

 For example, if one deposits $100 into a bank account, the right to withdraw the $100 “accrues” or “vestís] as a right” immediately, regardless of whether additional money is deposited into the account. The customer has an immediate, enforceable claim to withdraw the money. The only conditions imposed are those contained in the contract between the bank and the customer. Thus, if one deposits $100 into an account under the contractual promise that if the customer waits 10 years, the customer will be entitled to withdraw $150 — free of any additional costs or fees — then the right to withdraw that amount in 10 years vests at the point of the original deposit.

 The majority opinion’s claim that my analysis proves inconsistent is premised on the majority’s tautological assumption that only those benefits that are capable of being funded annually qualify as accrued financial benefits under article 9, § 24. The correctness of the majority’s accusation of inconsistency rests on its conclusion that the second sentence of article 9, § 24 is indispensible to the definition of “accrued financial benefits.” The majority obfuscates my point, however, which is that the second sentence of article 9, § 24 is irrelevant to tax exemptions because, while a tax exemption is an accrued financial benefit, it is not a liability that can be funded annually.

 All these provisions have been amended to remove the exemptions, beginning January 1, 2012. See Public Acts 41 through 45 of 2011. Notably, the Governor did not request that this Court review the constitutionality of these other statutory amendments. Nevertheless, my view that the statutory tax exemption within the Income Tax Act creates *361 accrued financial benefits for purposes of article 9, § 24 applies equally to the tax exemptions found within these retirement acts.

 For example, before the amendments contained in 2011 PA 41, § 40 of SERA provided in relevant part:
The right of a person to a pension, an annuity, a retirement allowance, any optional benefit, any other right accrued or accruing to any person under the provisions of this act, the various funds created by this act, and all money and investments and income of the funds, are exempt from any state, county, municipal, or other local tax. [MCL 38.40(1), as amended by 2002 PA 99 (emphasis added).]
In my view, there is a strong argument that the tax exemption provided by SERA is an inherent part of the deferred compensation embodied in pension plan. Nevertheless, given my belief that the tax exemptions are “contractual obligations” under Const 1963, art 9, § 24, it is not necessary to opine on whether the tax exemption statutes found within the individual retirement acts — such as the tax exemption previously found within SERA — create contractual obligations for purposes of the Contracts Clause, as have other jurisdictions. See, e.g., Hughes v Oregon, 314 Or 1, 21 n 27; 838 P2d 1018 (1992). Further, because I conclude that 2011 PA 38 violates article 9, § 24 of the Constitution, I do not find it necessary to conclusively opine on whether the statutory amendments also violate the Contracts Clauses of the Michigan and United States Constitutions. Nevertheless, it briefly bears mentioning that there is an arguable Contracts Clause violation in this case. Because I believe that the statutory tax exemptions are accrued financial benefits under article 9, § 24, these benefits are “contractual obligations” that implicate the Contracts Clauses. Accordingly, under the framework for Contracts Clause analyses set forth in Romein v Gen Motors Corp, 436 Mich 515, 534-536; 462 NW2d 555 (1990), it is arguable that the modifications of the tax exemption statutes will amount to a substantial impairment of that contractual right. See Bailey v North Carolina, 348 NC 130, 151; 500 SE2d 54 (1998). Finally, even if there is a legitimate purpose behind the statutory amendments, I question whether violating article 9, § 24 of the Constitution is a reasonable means of carrying out that purpose.